AMOS KEEFE *vs.* THE TOWN OF UNION.

First Judicial District, Hartford, October Term, 1903.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

Under the provisions of General Statutes, §§ 2517 to 2552, relating to health officers, a town is liable for the reasonable value of services rendered and expenses incurred, at the request of its town health officer, in guarding quarantined premises during the prevalence of smallpox therein, and in furnishing necessary articles for the use of those afflicted with the disease.

Argued October 6th—decided December 18th, 1903.

ACTION to recover for services and expenses while guarding and caring for persons ill with smallpox, pursuant to direction of the town health officer, brought to the Superior Court in Tolland County where a demurrer to the complaint was overruled (*Elmer, J.*) and the cause was afterwards tried to the court, *Gager, J.;* facts found and judgment rendered for the plaintiff, and appeal by the defendant. *No error.*

*Joel H. Reed*, for the appellant (defendant).

*Charles E. Searls*, for the appellee (plaintiff).

HALL, J. The plaintiff seeks by this action to recover compensation from the defendant town for services rendered and expenses incurred by him in January and February, 1902, at the direction of the town health officer, in guarding

and taking charge of certain premises in said town, and of the occupants thereof, among whom were two persons sick with smallpox, and also a number of workmen employed in loading and drawing lumber in a lot about a mile from said premises, all of whom had been quarantined in said premises by said town health officer.

It appears from the finding that at first two men were employed by the selectmen and paid by the town to guard the house day and night, to make the quarantine effective. After a few days the health officer discharged these two men and employed the plaintiff, under an arrangement that the workmen occupying the quarantined premises might during the day go to the wood-lot, where they had been working, and return to the house at night, in charge of the plaintiff, who was to guard the house and men and see that the quarantine was strictly observed. Whether this arrangement was approved by or known to the selectmen does not appear, nor does it appear that any greater expense was thereby incurred than would have been had the persons employed by the selectmen continued to guard the quarantined house. The said house was distant from any other house, upon an unfrequented road, and said workmen could safely pass from it to the wood-lot and return without endangering the public.

Under this arrangement the plaintiff, by direction of the health officer, took full charge of the house and its inmates for forty-eight days, and until the quarantine was raised, taking care that the workmen went directly to and from the house and wood-lot, and that no other person entered the house or left it. He also furnished, at the expense of the town, the provisions and other necessaries for the inmates of the house.

Nothing was said by the health officer to the plaintiff regarding payment for such services, but the plaintiff expected to receive reasonable compensation therefor, from the town.

The items of the bill of particulars were for services in guarding the quarantined premises for fifty-eight days; use of plaintiff's team and cash paid for telephoning, $116; and mat-

tress and bedding for use of patients, $15. The court found that $111.40 was a reasonable compensation for such services and expenditures, and rendered judgment for the plaintiff for that sum.

The defendant claims that the health officer had no authority to bind the town by his contract for such services and expenditures.

As early as 1711 it was by Act of the General Court made the duty of the selectmen of each town to take all proper steps to prevent the spread of contagious diseases, and they were empowered by warrant of two assistants or justices of the peace to place in a separate house persons sick or suspected to be infected with the smallpox, and to take care of and provide nurses for such sick and infected persons, at the charge of such persons if they were able, otherwise at the expense of the town to which they belonged, and to perform other described duties to prevent the spread of disease. Col. Rec. 1706–1716, p. 231.

In 1760 the civil authority and selectmen of any town, in case they judged it expedient to grant permission for the innoculation of persons, were required to assign a place or house where it could be carried on, and to provide nurses to care for the persons infected; for which service a "meet recompence" was to be paid to said authority and selectmen by those concerned. Conn. Laws, 1750–1770, p. 298.

In 1805 it was enacted that the civil authority and selectmen of the several towns in the State should be "the board of health, in their respective towns," with all the powers and authority for preventing malignant and infectious disease delegated to the civil authorities and selectmen, or to the selectmen, and with power to appoint health officers or a health committee; and that among other things it should be the duty of such board, officers, or committee, to cause to be removed all nuisances and sources of filth, within the limits of their town, which in their judgment would endanger the lives or health of the inhabitants, the expense thereof to be paid by the persons causing the same, and, if not known, by the town. It was also provided by this Act that all penalties or fines

incurred for any violation of said Act, or any regulation of the board of health, should be paid to the town and constitute a fund for the payment of the contingent expenses of the board and for the relief of poor persons of the town affected with infectious disease.   General Statutes, Rev. 1808, p. 616.

In 1828 the boards of health in the several towns were required to adopt suitable measures for the vaccination of all the inhabitants of their respective towns, the expense thereof to be paid from the public treasury of the town.   General Statutes, Compilation of 1835, p. 497.

An Act passed in 1866 provided that the board of health in any town might appoint such health officers and health committees as it deemed expedient, and delegate to them the powers possessed by the board.   Public Acts of 1866, Chap. 5, p. 6.

In the Revision of 1875, pp. 258, 260, the town board of health is described as consisting of the justices of the peace and selectmen of each town, and is given all the power necessary and proper for preserving the public health and preventing the spread of malignant diseases ; and is, among other things, specially empowered to order any person, " whom they may have reasonable ground to believe to be infected with any malignant, infectious, or contagious disease, into confinement in any place to be designated by said board, there to remain so long as said board shall judge necessary."

In 1878 an Act was passed providing for the appointment by the governor, with the advice of the senate, of a state board of health, to consist of six persons, of whom three were to be physicians and one a lawyer ; and among its duties are those of taking " cognizance of the interests of health and life among the people of this State," and of investigating and inquiring respecting the causes of disease, and causing proper sanitary information in its possession to be promptly forwarded to the local health authorities of any city, borough, town or county in the State.   The salary of the secretary, and certain expenses of such board, are paid by the State. Public Acts of 1878, pp. 349, 350.

Chapter 14 of the Public Acts of 1882, p. 125, provides for the addition to the town boards of health of " such reputable physicians resident in said town as shall be chosen for that purpose by said justices and selectmen."

In 1886 (Public Acts of 1886, Chap. 59, p. 582) it was enacted that the town boards of health should meet annually on a fixed day and elect officers of the board; and in 1887 (Public Acts of 1887, Chap. 65, p. 694) that the officers, so annually elected, should include a health officer or committee endowed with all the powers of the board, and that in case any town board should fail to elect such health officer or committee, the state board of health might appoint as health officer any reputable physician with full powers of the board, at a salary of not less than $50 a year, to be paid by the treasurer of the town.

The Act of 1893 (Public Acts of 1893, Chap. 248, p. 399) abolished all town boards of health, and provided that the judges of the Superior Court should appoint for each county a health officer to hold office for four years, to be paid by the State, who should appoint for each town some " discreet person, learned in medical and sanitary science, to be health officer for said town," and to exercise in such town—except within the limits of cities and boroughs empowered by charter to appoint health boards or officers—all the powers and duties by law vested in and imposed upon town boards of health, or health officers or committees. Such town health officers are required to report their doings annually to the town in which they are respectively appointed, such reports to be published " with other town reports," and to report to the county health officer and to the state board of health. Such town officer is to be paid by the treasurer of the town " not less than three dollars for each day of actual service, with his necessary expenses, on the approval of his bill by the county health officer."

Chapter 162 of the Public Acts of 1895, p. 527, empowers the town health officer to cause swampy depressions where there are unhealthy conditions, to be filled up, under the direction of the selectmen, the expenses incurred thereby, with

certain limitations, to be paid by the treasurer of the town, upon the order of the selectmen.

Chapter 145 of the Public Acts of 1895, p. 519, provides for the appointment by the common council of any city or the court of burgesses of any borough, upon the nomination of the mayor or warden, of some " discreet person learned in medical and sanitary science " to be health officer for such city or borough, with " all the rights and authority," and " subject to all the duties," provided by law for the board of health or health committee of such city or borough; and in case of the failure of such city or borough authorities to so appoint, for the appointment of such city or borough health officers by the health officer of the county in which such city or borough is situated ; the compensation of such health officers to be fixed by such common council or burgesses, and if not so fixed to be not less than $3 for each day of actual service, with his necessary expenses, on approval of his bill by the county health officer.

These are the principal legislative enactments prior to 1902 concerning the powers and duties of health boards, health officers, and health committees, in this State, their appointment and compensation, and the liability of towns for the expense incurred by such boards and officers in the performance of their duties.

The Revision of 1902 contains substantially the same provisions concerning the appointment and compensation of the state board of health, and of the county, city and town health officers, as are found in the Acts of 1878, 1893 and 1895, above referred to; and in relation to the powers and duties of such town and city health officers, substantially the same provisions as are contained in the several Acts before referred to describing the powers and duties of health boards, and of the officers and committees appointed by such boards.

Section 2548 of the Revision of 1902 contains the provision that all fines and penalties for violations of health laws and regulations shall be paid to the town, city or borough in which the offense is committed; but the provision that such

money shall be a fund for the use of the health officers is omitted.

From this legislation it will be seen that it has long been the policy of this State to require its towns and other municipalities to take, at their own expense, such measures within their respective limits as were deemed necessary to preserve the public health and prevent the spread of disease; and that for the accomplishment of that object, such acts as those described in the plaintiff's bill of particulars have always been required to be performed, in such towns, either by the selectmen, or by a board of health composed either of officers of the town, or of such officers and others chosen by them, or by one or more health officers, or a health committee, appointed either by such board or in some other manner, to be the health officer or officers for such town; and that such compensation as has been paid such health officers for their services, and the expense properly incurred by them in the performance of their duties, has been required to be paid by the town for which such officers were appointed and acted.

The State has required such duties to be performed by its towns and cities and by their respective health officers, not so much upon the ground that the prevention of disease is a matter of local interest, and that such duties are strictly municipal in their character, by the performance of which such towns and cities are benefited in their corporate capacity, as for the reason that the preservation of the public health is deemed to be a matter of interest to the entire State, and the duty so imposed upon the municipalities is deemed to be of a public and governmental nature, in the performance of which such towns and cities, and their health boards and officers acting for them, are governmental agencies acting for the benefit of the public. *Davock* v. *Moore*, 105 Mich. 120, 128.

This policy of the State was not changed by the Act of 1893. The principal purpose of that Act was "the creation of a single responsible officer in each town who should be charged with the important duties imposed upon health officers" (*Braman* v. *New London*, 74 Conn. 695, 697), and

who, by being "learned in medical and sanitary science,", would be qualified to perform such duties; and this purpose it was thought could best be accomplished by abolishing town boards of health and changing the method of appointing town health officers.

Clearly it was not intended, by so changing the manner of appointment of town health officers, to relieve the towns from the expense of the measures required by law to be taken in such towns for the preservation of health, since the provisions of the earlier statutes requiring towns to pay such expense still remain in force, and the Act of 1893 further provides that each town shall pay for the services and necessary expenses of its health officer.

The defendant is not relieved from liability by the fact that its health officer is no longer appointed either by the town or the town officers. For the accomplishment of such a public object as the preservation of the public health and the prevention of the spread of disease, it is competent for the legislature either to itself appoint, or to direct the manner of appointment of persons to act as town health officers, in order that the officers chosen may be qualified to adopt the best measures and render the greatest assistance in the performance of the public duty placed upon such towns; and it is also within the power of the legislature to impose the expense necessarily incurred by such health officers, in the performance of their duties, upon the municipalities for which they are respectively appointed, and the inhabitants of which are especially benefited by the acts of such health officers. *State ex rel. Bulkeley* v. *Williams*, 68 Conn. 131, 148.

The word "expenses," in the provision of the Act of 1893 (§ 2522) that the necessary expenses of the town health officer shall be paid by the town treasurer upon the approval of his bill by the county health officer, means something due the health officer. *Heublein* v. *New Haven*, 75 Conn. 545, 547. The sum due the plaintiff has not been paid by the health officer, nor is it claimed that he has incurred any personal obligation to pay it. It was not the purpose of this

provision that bills for services rendered at the direction of a health officer must be paid by him, or that they should be paid only when approved by the county health officer.

The rule exempting municipalities from liability for the negligent acts of their officers or servants while engaged in the performance of a governmental duty does not, as seems to be argued, relieve them from paying the expense incurred in the performance of such a duty.

The services rendered by the plaintiff, at the direction of the health officer, were by such officer, and apparently by the selectmen, deemed necessary for preventing the spread of a malignant disease. They were such services as under the statute the health officer had power to order to be performed, and as were intended to be performed under his direction. Unless such health officer possesses the power to bind the town for the payment for such services, it might be impossible for him to perform the duties which the law requires him to perform. We think he has such power, and that, in the absence of any express provision in the statute for the payment for such services, it is clearly implied by the language defining the duties and powers of a town health officer and expressly giving to him " all the powers necessary and proper for preserving the public health and preventing the spread of diseases " in the town for which he is appointed, that such town is liable for the payment of a reasonable compensation for such services and expenses as are described in the plaintiff's bill of particulars, when ordered by its health officer. *Elliott* v. *Kalkaska Supervisors*, 58 Mich. 452; *Labrie* v. *Manchester*, 59 N. H. 120 ; *Lynde* v. *Rockland*, 66 Me. 309.

The bill of particulars is sufficiently specific to cover the items included in the judgment.

There is no error.

In this opinion the other judges concurred.