FRANCESCA CARTA, ADMINISTRATOR, *vs.* THE CITY OF NORWALK ET ALS.

First Judicial District, Hartford, January Term, 1929.

WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, Js.

Argued January 2d—decided March 2d, 1929.

*Israel Poliner,* for the appellant (plaintiff).

*Frederick Lovejoy, Jr.,* for the appellees (defendants).

Hinman, J. The plaintiff offered evidence that his decedent, Salvatore Carta, on August 3d, 1926, went to a public beach known as Calf Pasture Beach, in Norwalk, and with other persons, participated in bathing there; that he dove from a raft, maintained in connection with the beach, struck his head against a hard object beneath the surface of the water, sustaining injuries from which he died on August 19th. Further evidence tended to prove that the obstruction which occasioned the injury was a concrete pier or post set in the ground and projecting about eight inches above the harbor bottom, but under the surface of the water, and used for anchoring the raft or float, which was attached thereto by a rope. There was evidence that the depth of water at this point varied from between three and four feet at low tide to eight or nine feet at high. The length of the rope, being sufficient to accommodate the greater depths, was such as to permit the raft to drift away from the post at low water so as to leave it several feet away from the edge of the float.

The plaintiff introduced in evidence a contract between the defendant city and parties named Keladites and Carter, by which the city granted to them the exclusive concession for the Calf Pasture Beach Bathing Pavilion for 1925, with the privilege of two additional years, the consideration to be, $1,800 for 1925, $2,500 for 1926, and $2,750 for 1927. A proposal, made

part of the contract, prescribes the charge to be made for the privilege of a bath house, and the separate charge for bathing suit and towel, and provides that prices charged for food, tobacco, candy and liquid refreshments, which the lessee is granted the exclusive privilege of selling, shall not exceed the retail prices charged in Norwalk; it further provides that at times when there are not sufficient bathing accommodations for all, preference shall be given to residents of Norwalk. The lessor agreed "to provide a float for the use of bathers which shall be under the care of the lessee." The lessee agreed to "assume all liability for and save the city harmless from any claims under the Workmen's Compensation Act," provide sufficient competent employees at lessee's expense, and remove all refuse left on the beach as well as clean the pavilion. The lessor reserved the right to inspect the premises at all times.

The nonsuit was granted on the grounds that, so far as the evidence disclosed, the defendant city was engaged in a public governmental duty and for that reason immune from liability, and that the evidence did not show that the city was responsible for the presence of the float, or that the plaintiff's decedent was in the exercise of due care. The soundness of these reasons must be determined with due regard to the rule that, in passing upon a motion for a nonsuit, the court was bound to consider as true such of the evidence introduced by the plaintiff as went farthest in support of his claims and to take into account every favorable inference that might legitimately be drawn from it. *Girard* v. *Grosvenordale Co.,* 83 Conn. 20, 25, 74 Atl. 1126; *Fritz* v. *Gaudet,* 101 Conn. 52, 124 Atl. 841.

As to the question of governmental immunity, the plaintiff was entitled to the benefit of inferences from the above mentioned contract that the. defendant city

owned or controlled the beach property in question and that it was renting the revenue-producing features connected with it, under the specified terms and conditions, for $2,500 for the then current year (1926), instead of itself conducting the enterprise, wholly or in part, but retained a right of supervision to effect compliance with the various requirements of the agreement. The immunity or liability of the city must be tested accordingly.

The principle that a municipality is relieved from liability for injuries resulting from acts done by it in the performance of a public duty, for the public benefit, and not for its own corporate profit, has been frequently and consistently recognized and applied in this State, and has been discussed so recently in *Hannon* v. *Waterbury,* 106 Conn. 13, 136 Atl. 876, that repetition here is unnecessary. "Public parks, playgrounds, swimming pools, and public baths or bathing houses are all examples of municipal functions undertaken for public benefit, and unless maintained for the corporate profit of the municipality are within the rule of governmental immunity." *Hannon* v. *Waterbury, supra,* p. 17; *Bolster* v. *Lawrence,* 225 Mass. 387, 390, 114 N. E. 722. However, if property is not held and used by the city for municipal purposes exclusively, but in considerable part as a source of revenue, the city is responsible, as a private owner would be, for injury sustained through its negligence. *Hourigan* v. *Norwich,* 77 Conn. 358, 365, 59 Atl. 487; *Oliver* v. *Worcester,* 102 Mass. 489, 502; *Chafor* v. *Long Beach,* 174 Cal. 478, 163 Pac. 670; 6 McQuillin on Municipal Corporations, p. 5512. It has been held that where such revenue is derived from renting part of the property there is no liability for conditions in no wise connected with or consequent upon the renting but arising quite independently thereof. *Bisbing* v. *Asbury*

*Park,* 80 N. J. L. 416, 78 Atl. 196, 33 L. R. A. (N. S.) 523. But, upon the same reasoning, the city is responsible for its negligent acts or omissions in connection with the property rented.

In order to deprive a municipal corporation of the benefit of governmental immunity, the act or function must involve special corporate benefit or pecuniary profit inuring to the municipality. If this element is present, the fact that the revenue or profit is applied to the maintenance of the property and the reduction of the debt incurred in its construction or acquirement, or otherwise ultimately to the benefit of the public, is not sufficient to create the immunity. *Hourigan* v. *Norwich, supra,* 365; *Oliver* v. *Worcester, supra,* 499; *Mersey Docks Trustees* v. *Gibbs,* 11 H. L. Cas. 686.

To remove the benefit of the principle, however, the operation must contemplate and involve revenue of such amount and nature as to signify a profit resulting therefrom, as distinguished from the imposition of such a nominal or small fee or charge as may fairly be regarded as a mere incident of the public service rendered, such as the fees imposed for the use of the swimming pool facilities involved in *Hannon* v. *Waterbury,* and similar incidental charges as illustrated by the cases therein cited, pages 18 and 19.

In the present case the amount of annual rental accruing to the city ($2,500) is such as to remove it, at least prima facie, from the category of such incidental income and to import such a "special corporate benefit or pecuniary profit" as to exclude the application of the rule of governmental immunity. It may be that a further development of facts may alter the situation, but the plaintiff's evidence and the required inferences therefrom were sufficient to protect him from a nonsuit on this ground.

As to the city's responsibility for the presence of

the float and the method of anchoring it, the contract apparently contemplated that the city furnish all the physical equipment of the beach resort, the lessee merely having the immediate control and operation of these facilities; it was specified, as we have seen, that the city should provide a float, and the inference logically deducible therefrom and from the fact that it had been installed in apparent compliance with the contract requirement was sufficient, in the absence of rebuttal or explanation, to sustain this element of the plaintiff's case, as against a motion for nonsuit, under the rule applicable thereto. *Salvietti* v. *Gormley,* 104 Conn. 741, 134 Atl. 171.

The remaining question relates to contributory negligence, which the trial court ruled had not been negatived. The evidence was that the plaintiff's decedent was sitting on the edge of the float nearest the shore and, from that sitting position, "dove" into the water which, while previously much deeper, had then been reduced in depth, by the falling of the tide, to between three and four feet, and was injured while submerged following the plunge. Conceding that, under the circumstances disclosed, the decedent should have known the approximate depth of the water at the time, and that to dive into water of that depth from any considerable height or from a springboard might very likely be regarded as so clearly negligent as to leave no room for question, yet we consider it not impossible for the jury reasonably to find that this decedent was free from contributory negligence in entering the water in the manner which all the evidence presented indicated that he did. Therefore a nonsuit on that ground was not justified. *Petrillo* v. *Connecticut Co.,* 92 Conn. 235, 102 Atl. 607.

There is error and a new trial is ordered.

In this opinion the other judges concurred.