By her complaint in two counts, the plaintiff seeks to recover damages for personal injuries suffered as a result of a fall which occurred in the public bathhouse at Seaside Park in the City of Bridgeport. The first count is based on claims of negligence on the part of the city in the construction and maintenance of the bathhouse and to this the city has filed an answer denying any negligence on its part, and claiming governmental immunity. The second count is based on *Page 336 
a claim that the city created and maintained a nuisance which caused the plaintiff's fall and to this the city has entered a general denial.
Seaside Park is a large recreational area owned and operated by the municipality, bordering on the waters of Long Island Sound. A variety of facilities including tennis courts, athletic fields running tracks and children's playgrounds have been provided for the residents of the city and other users of the park. An extensive beach is available for public bathing, in connection with which the city has constructed and maintained a bathhouse in which patrons may change apparel before bathing and before leaving the park. the bathhouse is situated some distance away from the beach, which is reached by going through a pass under the main traffic highway, known as Barnum Boulevard. Upon leaving the beach, patrons repass under the boulevard toward the bathhouse by the same route.
Also, on returning from the beach to the bathhouse, it is necessary for patrons to pass through a low pool, containing one or one and one-half feet of water, which serves to rinse off any accumulation of sand from the feet. Patrons then walk across a runway of wooden slats which are about four inches wide, with a space of one-half inch between them. In front of the basket or locker room, where patrons' belongings are safeguarded, and approaching the entrance to the shower room, this runway is located in an open area and the spacing of the boards is designed to permit excess water to run off, while the absence of a roof permits the sun to reach the wooden floor to dry off the surface.
On August 20, 1937, the plaintiff, accompanied by three children, arrived at the park in the latter part of the morning. The members of the party went to the bathhouse to don their bathing suits and passed from there to the beach, where they remained until three or four o'clock in the afternoon. On leaving the beach, they proceeded through the underpass to the bathhouse, thence along on the wooden runway in the direction of the shower bath room until the plaintiff fell at or near the entrance of the latter room, suffering injuries in the region of the base of her spine, for which recovery is now sought.
It is the claim of the plaintiff that the runway at or near the entrance to the shower room was usually wet and slimy, as she had observed this condition on several occasions prior *Page 337 
to the day of her fall. Likewise, she asserts that on the day mentioned, there was an accumulation of some foreign substance on the runway, which substance she does not particularly identify or describe. It is her contention, based on her own testimony, that persons passing from the wading pool to the runway frequently caused the surface to become wet and that other persons passing from the shower room dripped soap and water on the surface, thereby creating a slippery condition, against which no precaution had been taken by the city, in that it failed to place any mat thereon, or to take any other safeguarding or precautionary measures to protect patrons from injury.
On the other hand, the city contends that rubber mats are not suited for use in a place such as this for the reason that the treads thereon become worn and smooth and the surface thereof becomes slippery and if the mats are exposed to the summer sun they become gummy and sticky. Also there is a danger that such mats will slide, thus causing people to fall. Further evidence offered by the defendant is to the effect that it caused a heavy paint to be applied to the floor surface, into which, before drying, coarse sand had been deposited, thus creating a non-slippery surface, which was properly suited to the purposes of those having occasion to pass and repass.
As regards the first count of the complaint, based on negligence, it is agreed by both parties that the defense of governmental immunity is available to the city, unless it appears that the city is maintaining the bathhouse for corporate profit. In other words, there is no question but that the rule stated inCarta vs. Norwalk, 108 Conn. 697, at page 701 applies, although the parties disagree as to the application thereof to the facts of the present case.
Assuming, therefore, that the court would be justified in concluding that the city and its employees had been negligent in the manner of maintaining and operating the bathhouse and in caring for the entrance to the shower room, it becomes pertinent to determine first whether the facts presented here show that the city was operating the bathhouse and its bathing facilities for a corporate revenue or a profit, or in the exercise of a public function.
Besides the numerous and uncounted thousands of people who enjoyed the various facilities of Seaside Park during the season of 1937, it appears that some 73,500 persons used the *Page 338 
bathhouse during that season and the gross income amounted to $2,705.90.
No charge is made for any of the facilities of the park, except the bathhouse, for the use of which a charge of ten cents per adult is made. Upon payment of this fee, the patron passes through a turnstile, being thereafter permitted to use a basket in which street clothes and other belongings are deposited for storage during the absence of the patron. The charge also includes the use of the dressing room, care of the customer's belongings and use of the shower bath.
It is fundamental that when a municipality is engaged in the performance of a public duty for the public benefit, not for its own corporate profit, it will be immune from liability for personal injuries or property damage resulting from the negligence of its agents committed in the performance of such duty. Richmond vs. Norwich, 96 Conn. 582. Public parks, swimming pools, public baths or bathing houses are all examples of municipal functions undertaken for the public benefit, and unless they are maintained for the corporate profit of the municipality they are within the rule of governmental immunity.Bolster vs. Lawrence, 225 Mass. 387; Hannon vs.Waterbury, 106 Conn. 13, 17.
If property is not held and used by a city for municipal purposes exclusively, but in considerable part as a source of revenue, the city may be liable as a private owner would be for injuries resulting from its negligence. Hourigan vs. Norwich,77 Conn. 358. If a city is to lose the benefit of this immunity, however, the operation of the park must contemplate and involve a revenue of such an amount and nature as to signify a profit resulting therefrom as distinguished from the imposition of a nominal or small fee or charge which may be required as a mere incident to the public service rendered.Carta vs. Norwalk, 108 Conn. 697.
In the present case, it appears that Bridgeport maintained and operated Seaside Park for the primary benefit of its inhabitants and through them the benefit is extended to the general public. No charge is made for the enjoyment of any of the privileges of the park, except, as has been noted above, the ten cents charged for the use of the bathhouse. In passing upon the question whether the city operated the park for the public benefit or for corporate profit, no consideration is given to the facts relating to the cost of the maintenance of the entire *Page 339 
park and attention is paid only to the facts established in connection with the income from and expenses of the bathhouse and the bathing beach.
In the same structure as the bathhouse, there is a lunch and refreshment counter which formerly was operated by private persons under lease from the city, while in recent years this concession has been operated directly by the city. The customers of this stand include not only those who enjoy the bathhouse and bathing facilities, but it is open to all who go to the park. Appurtenant to this concession, the city operates a converted bus along the boulevard, from which customers in many parts of the park may purchase refreshments. Whether the operation of this food concession is the exercise of a governmental function or whether it is operated for a corporate profit need not be decided here. It will be sufficient for present purposes to point out that this lunch counter is independent of the bath concession so that the amount of income therefrom has no bearing upon the question whether the city enjoys immunity from negligence in operating the bathhouse.
No useful purpose will be served in setting out in full the figures showing the income from the bathhouse during the past several years, nor to set out the expenses of operating the same. It seems sufficient to point out that in recent years the cost of operating the bathhouse and beach, including wages of manager, caretakers, bathhouse workers, life guards and similar employees, but excluding such items as charges for water, insurance, lights, maintenance and repairs, and also excluding depreciation on the property, far exceeded the gross income, although formerly the income was much greater. Over five years ago, and for a few years prior thereto, the income of the bathhouse was in excess of the expenditures, exclusive of the charges for water, lights, repairs, interest, etc., and from this latter fact, the plaintiff argues that the conclusion should be reached that the bathing beach was operated with a profit motive.
However, the mere fact that at times the income from the bathhouse may have exceeded the cost of maintenance and operation does not necessarily lead to the conclusion that the object of the city in operating the bathing facilities was corporate profit rather than public benefit. Tierney vs. Correia,120 Conn. 140. The general object of the municipality is not to be measured by something which fluctuates from year to *Page 340 
year as does the use and income of a bathing beach which is dependent as to use and income upon a variety of circumstances, including the important factor of weather conditions. The charge of ten cents made to those who enjoy the various facilities of the bathhouse indicates a charge made for the purpose of regulation and control rather than a plan on the part of the city to glean a return to its treasury. The charge, then, appears to be one incidental to the object sought rather than a part of a plan to accomplish an object.
Accordingly, the conclusion is reached that the special defense of governmental immunity must be upheld against the first count of the complaint.
The second count of the complaint purports to state a cause of action on the theory of nuisance, against which the defense of governmental immunity is not available. An examination of this count will disclose that in paragraph 5 it is asserted "that the floor where the plaintiff fell was wet, slippery, dangerous and defective and was covered with an accumulation of water and slime that constitutes a nuisance created and maintained by the defendant and the plaintiff's fall was caused thereby." This excerpt contains all of the allegations of liability on which reliance is made in this count.
Thus it appears that the specific facts alleged are not sufficient to support the conclusion stated therein, as there is no express allegation that the condition present at the time of the injury and for which it is sought to hold the city liable was one having a natural tendency to create danger and inflict injury. The pleading is not as complete as the complaint which caused a division in the Supreme Court of Errors in Pope vs. NewHaven, 91 Conn. 79. Nor is it as specific as the complaint in Hoffman vs. Bristol, 113 Conn. 386. However, as no demurrer has been filed and as the case has been tried on the assumption that a complete cause of action has been stated in this count, no further attention will be paid to the question of pleading, particularly in view of the result reached therein.
Nuisance, as a legal concept, may have its origin in negligence or there may be disclosed a condition so permanent or continuing and so inherently or intrinsically dangerous, as a menace to the safety of individuals, as to constitute what is ordinarily characterized as an absolute nuisance. Hoffman vs.Bristol, 113 Conn. 386; Hill vs. Way, 117 id. 359; Gipstein vs.Kirshenbaum, 118 id. 681. No facts have been alleged or *Page 341 
proved to lead to a conclusion that an absolute nuisance was present in this case, as there is no claim of a structural defect or of any condition which in and of itself would be almost certain to cause injury. Mere tendency to injury is not sufficient. There must be something actually appreciable which of itself arrests the attention, that rests not merely in theory, but strikes the common sense of the ordinary citizen. Gipsteinvs. Kirshenbaum, 118 Conn. 681, 684. A fair example of an absolute nuisance is disclosed by the facts in the Hoffman case,supra, where the defendant maintained a diving board about four feet above the surface of water of a constant depth of a little more than three feet and usually so opaque that its shallowness would not be discernible by one standing on the board; to invite adult persons to dive from such a board was to invite such adult to injure himself, and the defendant city was held liable to one injured as a result of an ordinary and normal use of the board for the purpose for which it was constructed and maintained. Hoffman vs. Bristol, 113 Conn. 386.
The second count is designed to state a cause of action for a nuisance arising from the presence of an accumulation of water and slime on the floor which caused the surface to become wet, slippery, dangerous and defective. If there is any liability, therefore, it will be one arising from the failure of the city and its employees to guard against danger by taking structural precautions or by the failure of the city and its employees to remove an accumulation of water and slime. Nuisance may be a conclusion of law or it may be one of fact. Andrews vs.Bristol, 120 Conn. 499, 502.
The present case does not disclose a condition so extremely hazardous as to be held to amount to a nuisance as a matter of law, as there was no inherently dangerous situation existing there. A situation is presented where, if a nuisance has been established, it is one having its origin in negligence and that is to be found, if at all, as a fact from the credible evidence produced at the trial.
The real question on this phase of the case, then, is whether the passageway at the bathhouse as constructed and designed to be normally used or as maintained on the day of the injury had such a natural tendency to create danger or inflict injury as to constitute a nuisance as a matter of fact.
Since this theory of nuisance is based upon negligence, there must be more than an act or failure to act on the part of the *Page 342 
defendant. The danger created must have been a continuing one. Bush vs. Norwalk, 122 Conn. 426; De Mare vs. Guerin,
125 id. 362.
The present case may readily be distinguished from Stoto vs.Waterbury, 119 Conn. 14, where the court held that a nuisance might be found from the negligence of the defendant city in leaving an areaway open and unguarded for two days.
The facts disclose that the passageway leading to the shower room was in an open area which was reached by the rays of the sun each day so that the floor surface was not continually wet. It is claimed by the plaintiff that persons leaving the shower room often dripped soap onto the floor, thereby creating a slippery condition, but the evidence of this or of the frequency of the occurrence is far from convincing. The most that can be found from the plaintiff's evidence is that persons coming to the bathhouse from the beach had to pass through the rinsing pool and they tracked water onto the boards. However, the floor boards were level and were laid in such fashion that excess water would run through to the ground below, as the floor was level and designed to prevent any accumulation of water. The evidence that other persons fell at the same place on other occasions is not of such weight that credence should be given to it. It does not appear that the water tracked or dripped to the floor made the runway slippery for any extended period or on oft-repeated occasions.
The plaintiff claims that the absence of any mats, either of rope or rubber, created a dangerous condition, but the evidence of men experienced in the control and management of bathing resorts is to the effect that there is at least a reasonable difference of opinion as to the suitability and efficacy of such mats.
Under the second count, the conclusion seems inevitable that the evidence establishes the existence of a condition which might have resulted in injury, but not one which had a natural tendency so to do.
 Judgment may be entered for the defendant to recover its costs.