******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

DAVID L. ST. PIERRE *v.* TOWN
OF PLAINFIELD ET AL.
(SC 19871)

Rogers, C. J., and Palmer, Eveleigh, McDonald, Espinosa,
Robinson and D'Auria, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendant town for per-
sonal injuries he sustained after falling on wet steps located at the
defendant's municipal pool. The plaintiff fell after participating in an
aqua therapy session conducted by the defendant E Co., which had paid
the town a nominal hourly fee to reserve the pool two or three times
per week. The town provided a lifeguard during the aqua therapy ses-
sions and was responsible for the cleaning and general maintenance of
the pool. E Co. did not have a formal contract with the town to reserve
the pool, but used a one page form letter that provided basic information
regarding the reservation. The town filed a motion for summary judg-
ment, claiming that municipal immunity precluded the plaintiff's action
because the alleged acts or omissions involved the town's judgment or
discretion, the operation of the pool was a government function, and
no exception to municipal discretionary act immunity had been shown.
The plaintiff countered that municipal immunity had been abrogated
either by the exception under the statute (§ 52-577n [a] [1] [B]) providing
that a municipality shall be liable for damages caused by its negligence
in the performance of a proprietary function from which it derives a
special corporate profit or pecuniary benefit, or by the identifiable per-
son, imminent harm exception. The trial court granted the town's motion
for summary judgment on the ground that the town was immune from
liability, concluding that the operation of the pool was a government
function and that the town had operated the pool at a financial loss.
The court also found that the identifiable person, imminent harm excep-
tion did not apply because the plaintiff was voluntarily present at the
aqua therapy program, and the water on and around the pool surfaces
did not qualify as an imminent harm. The plaintiff appealed from the
judgment in favor of the town, claiming that the trial court incorrectly
concluded that the town was immune from liability because it had
derived a special corporate profit or pecuniary benefit from renting the
pool to E Co., a for-profit business, for a fee, or because he constituted
an identifiable person subject to imminent harm. *Held*:

1. The town's operation of its municipal pool constituted a governmental
function from which it did not derive a special corporate or pecuniary
benefit so as to abrogate its discretionary act immunity: the town did
not derive a special corporate profit or pecuniary benefit by renting the
pool to E Co. for its private use, as the aqua therapy program fit within
the general public purposes of a municipal pool because it promoted
health and exercise, the fee that the town charged E Co. for use of the
pool was nominal, the total fees collected from all parties renting the
pool did not cover the annual costs of maintaining the pool, the pool
was rented without a formal lease or contract, and the town continued
to provide a lifeguard and maintain responsibility for the general mainte-
nance of the pool; furthermore, the plaintiff could not prevail on his
claim that this court should determine the profitability of the pool by
evaluating the fees paid by only E Co. with respect to the period of
time that E Co. had reserved the pool, as that argument was not raised
before the trial court, and this court has never used that method to
determine whether a municipality derived a profit; moreover, extending
the abrogation of municipal immunity to situations, such as the one
here, in which a town allows the private use of its facilities for a nominal
fee, could expose municipalities to great liability and deter them from
continuing to allow their facilities to be used by outside parties.

2. The identifiable person, imminent harm exception did not abrogate the
town's municipal immunity, as the plaintiff was not an identifiable person
or a member of an identifiable class of persons for purposes of that
exception; the fact that the plaintiff was not compelled to attend the

aqua therapy sessions provided by E Co., but had voluntarily decided to use E Co.'s services, precluded this court from concluding that he was a person or in a group of persons identifiable to the lifeguard on duty as a potential victim or victims of an imminent harm.

Argued May 1—officially released August 8, 2017

*Procedural History*

Action to recover damages for personal injuries sustained as a result of defendants' alleged negligence, brought to the Superior Court in the judicial district of Windham, where the court, *Boland, J.*, granted the named defendant's motion to strike and granted the named defendant's motion for summary judgment and rendered judgment thereon; thereafter, the court, *Calmar, J.*, granted the named defendant's motion for judgment as to the stricken count of the complaint and rendered judgment thereon, from which the plaintiff appealed. *Affirmed.*

*Mary M. Puhlick*, for the appellant (plaintiff).

*Thomas R. Gerarde*, with whom, on the brief, was *Katherine E. Rule*, for the appellee (named defendant).

*Opinion*

ROGERS, C. J. The issue raised in this appeal is whether municipal immunity is abrogated by either the proprietary function exception of General Statutes § 52-557n[1] or the identifiable person, imminent harm exception. Specifically, we must decide whether there is municipal immunity when a town charges a nominal fee to a private group for reserved use of a public pool and an individual group member slips and falls on accumulated water in the vicinity of that pool. The plaintiff, David L. St. Pierre, appeals from the judgment rendered in favor of the named defendant, the town of Plainfield,[2] after concluding that no exception to the defendant's general immunity applied.[3] The plaintiff claims that the trial court improperly concluded that the defendant was immune from liability because (1) the defendant derived a special corporate profit or pecuniary benefit through its operation of the pool, or (2) the plaintiff constituted an identifiable person subject to imminent harm. We disagree with each of these claims and, accordingly, affirm the judgment of the trial court.

The following undisputed facts and procedural history are relevant to this appeal. The plaintiff filed this negligence action against the defendant and Eastern Connecticut Rehabilitation Center, Inc. (Eastern); see footnote 2 of this opinion; to recover for injuries he allegedly sustained in an August 26, 2011 fall on wet steps after participating in an aqua therapy session. This session was conducted by Eastern in a pool owned by the defendant, which is located in the defendant's town hall building. The plaintiff alleged that he slipped and fell on the steps, which were covered with approximately one-quarter inch of water, on his way to the men's locker room. None of the defendant's employees witnessed the incident, nor had there been any previous complaints about the condition of the steps.

Since 1994, Eastern, through its manager Penny Allyn, had reserved the pool two to three times per week for one hour sessions to provide aqua therapy services to its rehabilitation patients. Since 2006, Eastern has paid the defendant $50 per reserved hour for the exclusive use of the pool during the sessions.[4] Participation in the aqua therapy program ranged from two to seven individuals per session. During the reserved times, the defendant provided a lifeguard and remained responsible for the cleaning and general maintenance of the pool. There was no formal contract between the defendant and Eastern. Rather, a one page form letter generally used to make reservations provides the rules of pool use, in addition to listing the usage fee, the time of the reservation, and the party making the reservation.

Eastern is not the only program that utilizes the pool. Myra Ambrogi, the defendant's recreation director,

stated in her affidavit that the pool is generally open to the public as well as for organizations that pay the usage fee. Activities held at the pool include swim lessons, open swim periods, and exercise classes.

In discussing the pool's financials, Ambrogi stated in her affidavit that the costs of operating the pool for the fiscal year from July 1, 2011 to July 1, 2012, were $81,315.42 and that total revenue of $75,605.96 was taken in during the same time frame, including the fees from Eastern. Thus, the pool operated at a loss of $5709.46. Ambrogi's figures included operational costs such as the lifeguards' salaries, instructor fees, equipment, pool chemicals and cleaning supplies, but did not include electricity, heat, water, maintenance employees' salaries, or consumable supplies.

The plaintiff filed this action on August 19, 2013, alleging that the defendant had been negligent in various ways and that the plaintiff had been injured as a result. On January 30, 2015, the defendant filed a motion for summary judgment, claiming that municipal immunity applied to preclude the plaintiff's action because any acts or omissions alleged by the plaintiff involved judgment or discretion, the operation of the pool was a governmental function, and no exception to discretionary act immunity had been shown. The plaintiff objected, arguing that municipal immunity did not attach because the defendant's operation of the pool constituted a proprietary function and, in the alternative, that the identifiable person, imminent harm exception to immunity applied. In an August, 2015 memorandum of decision, the trial court agreed with the defendant that it was immune from liability. As to the proprietary function exception, the trial court concluded that the defendant's operation of a municipal pool was a governmental function and did not create a profit for the defendant. In regard to the identifiable person, imminent harm exception, the trial court concluded that the plaintiff was not an identifiable person given his voluntary presence at the aqua therapy program and that the water on and around the pool surfaces did not qualify as an imminent harm. This appeal followed.[5]

On appeal, the plaintiff does not contest that the allegedly negligent acts of the defendant are discretionary in nature and, therefore, are generally entitled to immunity. See *Haynes* v. *Middletown*, 314 Conn. 303, 312, 101 A.3d 249 (2014). Consequently, we confine our analysis to whether municipal immunity is abrogated by an exception.

We begin with the standard of review and applicable law. "The standard of review of a trial court's decision granting summary judgment is well established. Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine

issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary. . . . On appeal, we must determine whether the legal conclusions reached by the trial court are legally and logically correct and whether they find support in the facts set out in the memorandum of decision of the trial court." (Internal quotation marks omitted.) *Cefaratti* v. *Aranow*, 321 Conn. 637, 645, 138 A.3d 837 (2016). Specifically, whether municipal immunity applies is a matter of law for the court to decide when there are no unresolved factual questions material to the issue. *Edgerton* v. *Clinton*, 311 Conn. 217, 227, 86 A.3d 437 (2014).

I

The plaintiff claims first that the proprietary function exception applies to abrogate the defendant's immunity. The proprietary function exception is codified in § 52-557n (a) (1) (B), which provides in relevant part: "Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by . . . negligence in the performance of functions from which the political subdivision derives a *special corporate profit or pecuniary benefit* . . . ." (Emphasis added.) The plaintiff contends that the defendant derived a special corporate profit or pecuniary benefit from the operation of its municipal pool because it rented that pool to Eastern, a for-profit entity, for a fee. We disagree.

In *Considine* v. *Waterbury*, 279 Conn. 830, 837–48, 905 A.2d 70 (2006), we undertook a comprehensive analysis of § 52-557n (a) (1) (B). We concluded that the statutory provision "codifies the common-law rule that municipalities are liable for their negligent acts committed in their proprietary capacity," as opposed to in their governmental one.[6] Id., 844. Liability for proprietary acts means that a municipality "is liable to the same extent as in the case of private corporations or individuals . . . ."[7] (Internal quotation marks omitted.) Id., 843. To determine whether the defendant is subject to such liability in the present case, we analyze whether the defendant derives a special corporate profit or pecuniary benefit from the function of operating its pool, in other words, whether that function is proprietary.[8]

We previously have concluded that, "[i]f a municipality is acting only as the 'agent or representative of the state in carrying out its public purposes'; *Winchester* v. *Cox*, [129 Conn. 106, 109, 26 A.2d 592 (1942)]; then

it clearly is not deriving a special corporate benefit or pecuniary profit. Two classes of activities fall within the broader category of acting as the agent of the state: '[1] those imposed by the [s]tate for the benefit of the general public, and [2] those which arise out of legislation imposed in pursuance of a general policy, manifested by legislation affecting similar corporations, for the particular advantage of the inhabitants of the municipality, and only through this, and indirectly, for the benefit of the people at large. . . . For example, the maintenance of the public peace or prevention of disease would fall within the first class; *Keefe* v. *Union*, 76 Conn. 160, 166, [56 A. 571 (1903)]; while the maintenance of a park system would fall within the second class.' " *Considine* v. *Waterbury*, supra, 279 Conn. 845–46. "[T]he second class of activities encompasses functions that appear to be for the sole benefit of a municipality's inhabitants, but nevertheless provide indirect benefits to the general public because the activities were meant to improve the general health, welfare or education of the municipality's inhabitants." Id., 846.

Historically, we have concluded that operating a municipal pool constitutes a governmental function. *Hannon* v. *Waterbury*, 106 Conn. 13, 17–18, 136 A. 876 (1927). In *Hannon*, this court recognized that municipalities operating swimming pools are performing a governmental function, because the municipality is effecting the "education of the people of the city in teaching them to swim and thus guarding their lives against the accident of drowning, promoting a most useful and beneficial form of exercise, and teaching cleanliness of habits of living and thus preserving their health." Id., 18.

The General Statutes support *Hannon*'s holding. General Statutes § 7-130b authorizes municipalities to create recreational authorities or departments. Such bodies are "deemed to be . . . instrumental[ities] exercising public and essential government functions to provide for the public health and welfare . . . ."[9] General Statutes § 7-130d. Municipal recreational authorities or departments are statutorily empowered to construct and operate a variety of projects; see General Statutes § 7-130d (c); including, specifically, "swimming pools." General Statutes § 7-130a (d).

The plaintiff claims that the nature of the use of the pool in this case is distinguishable from that at issue in *Hannon*. Specifically, he argues that the defendant here is renting the pool to Eastern for use in its business, but the defendant city in *Hannon* served children and individuals via swim lessons. In the plaintiff's view, rental of municipal property to a private party is a proprietary action. To determine whether renting a municipal pool to a business for private use constitutes a change in the nature of the activity sufficient to abrogate immunity, we must review our case law on the

charging of fees for use of a municipal property.

We have concluded previously that a "municipality may . . . charge a nominal fee for participation in a governmental activity and it will not lose its governmental nature as long as the fee is insufficient to meet the activity's expenses." *Considine* v. *Waterbury*, supra, 279 Conn. 847. In *Hannon*, for example, we concluded that charging nominal fees for swimming lessons[10] did not alter the governmental nature of running a municipal swimming pool. *Hannon* v. *Waterbury*, supra, 106 Conn. 18–19. We reasoned that the "money taken in did not pay the entire expense of operating the pool," in particular, by failing to "pay for the large amount of electricity used in operating the motor, drying the hair and lighting, coal, water, chemicals used in the water, [as well as] the rental value or maintenance of the part of the building used and the equipment . . . ." Id., 15. Because the pool actually was operated at a loss, the fees charged did not constitute a "profit," but, rather, "the charge was a mere incident of the public service rendered in the performance of a governmental duty." Id., 18; see also *Carta* v. *Norwalk*, 108 Conn. 697, 702, 145 A. 158 (1929) (to qualify as proprietary function "operation must contemplate and involve revenue of such amount and nature as to signify a profit resulting therefrom, as distinguished from the imposition of such a nominal or small fee or charge as may fairly be regarded as a mere incident of the public service rendered").

In contrast, a "municipality generally has been determined to be acting for its own special corporate benefit or pecuniary profit where it engages in an activity 'for the particular benefit of its inhabitants' . . . or if it derives revenue in excess of its costs from the activity."[11] (Citations omitted.) *Considine* v. *Waterbury*, supra, 279 Conn. 847. Specifically, a municipality may act in its proprietary capacity by "leas[ing] municipal property to private individuals." Id., 849 (citing cases). Nevertheless, we have cautioned against treating "actual pecuniary profit" alone as determinative of whether a function is proprietary because it could encourage municipalities to skirt tort liability by avoiding " 'implementation of cost-efficient measures [while] encourag[ing] deficit spending' " to maintain a loss in the financial year. Id., 847 n.11. Still, a proprietary function has been found where the municipality is "act [ing] 'very much like private enterprise . . . .' " Id., 848, quoting W. Prosser & W. Keeton, Torts (5th Ed. 1984) § 131, p. 1053.

The following examples are illustrative. In renting out part of its municipal golf course to a single private party for use as a restaurant for approximately $29,000 per year, the defendant city in *Considine* v. *Waterbury*, supra, 279 Conn. 833, 850–51, was deemed to have acted in a proprietary capacity because such a lease "stands

in stark contrast from those activities in which this court has determined that the municipality was acting as the state's agent for the direct or indirect benefit of the general public." The city's collection of "a *substantial rent* [from] a private party to operate a business . . . very much resembles private enterprise" in its "nature and character." (Emphasis added.) Id., 851. Similarly, the annual rental of a municipal beach pavilion for a fee of $2500 in 1926 to a private party constituted prima facie evidence of a profit for the defendant city. *Carta* v. *Norwalk*, supra, 108 Conn. 701–702; see also *Blonski* v. *Metropolitan District Commission*, 309 Conn. 282, 284, 71 A.3d 465 (2013) (defendant liable because conduct with respect to gate that injured plaintiff inextricably linked to defendant's proprietary water supply operation); *Martel* v. *Metropolitan District Commission*, 275 Conn. 38, 55–56, 881 A.2d 194 (2005) (defendant immune from liability, as conduct not connected to proprietary operation of for-profit water supply company).

Evaluating the plaintiff's claims against this legal background, we conclude that the defendant's operation of its municipal pool does not constitute a proprietary function so as to abrogate its discretionary act immunity. First, the defendant's rental of its pool to an aqua therapy program two or three times a week fits within the general public purposes espoused in *Hannon*. By allowing use of the pool, the defendant is promoting health and exercise for those using the pool, purposes that are entirely within *Hannon*'s framework. See *Hannon* v. *Waterbury*, supra, 106 Conn. 18. Second, the fee charged to Eastern is, like the fees charged in *Hannon*, nominal, and the total fees collected from all parties reserving the pool do not cover the costs of maintaining the pool. Instead, in the year in question, the pool's expenses exceeded revenues by more than $5000, even without considering such things as electricity and water costs. This undercuts the plaintiff's assertion that the municipality is acting like a "private enterprise." (Internal quotation marks omitted.) *Considine* v. *Waterbury*, supra, 279 Conn. 848. Most private enterprises do not operate at a loss, or they will cease to exist. Also, the defendant's nominal fee of $50 per hour had remained stable for several years, further suggesting that profit is not a goal; cf. id., 833 (noting that rent charged to private party increased annually as lease term); but, rather, that the fee "was a mere incident of the public service rendered in the performance of a governmental duty." *Hannon* v. *Waterbury*, supra, 18. Third, unlike in *Considine* and *Carta* v. *Norwalk*, supra, 108 Conn. 699, private parties, like Eastern, who reserve the pool do so without a formal lease or contract and for only short periods of time. Aside from the equivalent of a sign-up sheet that Eastern's manager fills out and the consistency with which Eastern has used the pool, nothing in Eastern's reservation of the pool resembles a

binding commercial lease. As mentioned, the defendant continues to provide a lifeguard during reserved times and to retain responsibility for the general maintenance of the pool.

The plaintiff claims that, even if no actual profit was gained by the defendant's operation of the pool overall, this court should determine profitability by evaluating the fees paid by Eastern with reference to the periods of time that Eastern reserved the pool, and conclude that Eastern's fee for its use exceeded the costs of operating the pool for those periods of time. Specifically, the plaintiff reasons that, annually, Eastern is contributing $7800 for 156 hours of use, an amount that exceeds the costs attributable to the pool for that period of time. This argument was not raised in the trial court and should not be raised for the first time on appeal, particularly in the absence of an undisputed factual record to support it.[12] See, e.g., *White* v. *Mazda Motor of America, Inc.*, 313 Conn. 610, 619–20, 99 A.3d 1079 (2014). In any event, we have never before held that, to determine whether a municipality derives a profit, the measure of revenues to expenses should be determined based on the exact proportion of time a private company uses a facility relative to the yearly costs of operating that facility. Because the plaintiff has not provided any authority in support of this inventive approach to evaluating profitability, we decline to adopt it.

It bears mentioning that extending the abrogation of municipal immunity to any situation in which a town allows the private use of its facilities for a nominal fee potentially could expose municipalities to great liability. In the face of such a threat, no rational municipality would continue to allow its municipal facilities to be used by outside parties. This would be detrimental to the enjoyment and use of municipal facilities by any smaller group of the general public that might wish to use these facilities. Under such restrictions, private, nonprofit, and other independent groups would be prevented from utilizing public parks, softball fields and, yes, pools. On the basis of the foregoing analysis, we conclude that the defendant's operation of the municipal pool constitutes a governmental function, and, by operating the pool, the defendant does not derive a special corporate profit or pecuniary benefit.

## II

We turn next to whether any other recognized exception to immunity is in play. Three exceptions to discretionary act immunity are recognized,[13] but only one is relevant here: the identifiable person, imminent harm exception. Pursuant to this exception, liability is not precluded when "the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm . . . ." (Internal quotation marks omitted.) *Doe*

v. *Petersen*, 279 Conn. 607, 615–16, 903 A.2d 191 (2006). The plaintiff contends that he qualifies as an identifiable person subject to imminent harm by virtue of his presence at the defendant's pool for the aqua therapy session provided by Eastern. Specifically, he contends that he was an identifiable individual to the on duty lifeguard employed by the defendant. We disagree that the plaintiff qualifies as an identifiable person and, therefore, conclude that this exception does not apply to abrogate the defendant's municipal immunity.

"[T]he identifiable person, imminent harm exception to qualified immunity for an employee's discretionary acts is applicable in an action brought under § 52-557n (a) to hold a municipality directly liable for those acts." *Grady* v. *Somers*, 294 Conn. 324, 332, 984 A.2d 684 (2009). The exception requires three elements: "(1) an imminent harm; (2) an identifiable victim; and (3) a public official to whom it is apparent that his or her conduct is likely to subject that victim to that harm . . . . We have stated previously that this exception to the general rule of governmental immunity for employees engaged in discretionary activities has received very limited recognition in this state. . . . If the plaintiffs fail to establish any one of the three prongs, this failure will be fatal to their claim that they come within the imminent harm exception." (Internal quotation marks omitted.) *Strycharz* v. *Cady*, 323 Conn. 548, 573–74, 148 A.3d 1011 (2016).[14]

"An allegedly identifiable person must be identifiable as a potential victim of a specific imminent harm. Likewise, the alleged imminent harm must be imminent in terms of its impact on a specific identifiable person." (Internal quotation marks omitted.) *Cotto* v. *Board of Education*, 294 Conn. 265, 276, 984 A.2d 58 (2009).

Generally, we have held that a party is an identifiable person when he or she is compelled to be somewhere. See *Strycharz* v. *Cady*, supra, 323 Conn. 575–76 ("[o]ur decisions underscore . . . that whether the plaintiff was compelled to be at the location where the injury occurred remains a paramount consideration in determining whether the plaintiff was an identifiable person or member of a foreseeable class of victims." [internal quotation marks omitted]). Accordingly, "[t]he only identifiable class of foreseeable victims that we have recognized . . . is that of schoolchildren attending public schools during school hours because: they were intended to be the beneficiaries of particular duties of care imposed by law on school officials; they [are] legally required to attend school rather than being there voluntarily; their parents [are] thus statutorily required to relinquish their custody to those officials during those hours; and, as a matter of policy, they traditionally require special consideration in the face of dangerous conditions." (Internal quotation marks omitted.) Id., 576.

Outside of the schoolchildren context, we have recognized an identifiable person under this exception in only one case that has since been limited to its facts.[15] Beyond that, although we have addressed claims that a plaintiff is an identifiable person or member of an identifiable class of foreseeable victims in a number of cases, we have not broadened our definition.[16] See, e.g., *Cotto* v. *Board of Education*, supra, 294 Conn. 267–68, 279 (director of community based summer youth program located in public school was not identifiable person when he slipped in wet bathroom because "then so was every participant and supervisor in the Latino Youth program who used the bathroom," and anyone "could have slipped at *any* time" [emphasis in original]); see also *Coe* v. *Board of Education*, 301 Conn. 112, 119–20, 19 A.3d 640 (2011) (student injured while attending middle school graduation dance occurring off school grounds did not qualify as member of identifiable class of foreseeable victims because she was not required to attend dance); *Grady* v. *Somers*, supra, 294 Conn. 328, 355–56 (permit holder injured at refuse transfer station owned by town did not qualify as identifiable person despite being paid permit holder and resident of town); *Durrant* v. *Board of Education*, 284 Conn. 91, 96, 104, 108, 931 A.2d 859 (2007) (mother who slipped and fell while picking up her child from optional after-school day care program run in conjunction with public school did not qualify as member of identifiable class of foreseeable victims because program was optional); *Prescott* v. *Meriden*, 273 Conn. 759, 761–62, 764–65, 873 A.2d 175 (2005) (parent voluntarily attending high school football game to watch his child play was not member of identifiable class of foreseeable victims because he was not compelled to attend, school officials lacked similar duties of care to him as to child given his status as parent, and exception is "narrowly defined" [internal quotation marks omitted]); *Evon* v. *Andrews*, 211 Conn. 501, 508, 559 A.2d 1131 (1989) ("[t]he class of possible victims of an unspecified fire that may occur at some unspecified time in the future is by no means a group of 'identifiable persons' ").

In the present case, the plaintiff was in no way compelled to attend the aqua therapy sessions provided by Eastern. Instead, he voluntarily decided to use Eastern's services. Under established case law, this choice precludes us from holding that the plaintiff was an identifiable person or a member of an identifiable class of persons. As the identifiable person, imminent harm exception requires conjunctive proof of both, our determination that the plaintiff does not qualify as an identifiable person ends our analysis, and we need not consider whether an imminent harm existed on these facts.

The judgment is affirmed.

In this opinion the other justices concurred.

[1] General Statutes § 52-557n (a) provides in relevant part: "(1) Except as

otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by . . . (B) negligence in the performance of functions from which the political subdivision derives a special corporate profit or pecuniary benefit  . . . . (2) Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by . . . (B) negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law."

[2] Eastern Connecticut Rehabilitation Center, Inc., was also named as a defendant in this action. Because the plaintiff appealed after the court disposed of all claims in this action against the town of Plainfield; see Practice Book § 61-3; and Eastern Connecticut Rehabilitation Center, Inc., is not a party to this appeal, we refer in this opinion to the town of Plainfield as the defendant.

[3] The plaintiff alleged two counts against the defendant, one pursuant to § 52-557n and the other pursuant to General Statutes § 7-465, a municipal indemnification statute. The trial court struck the § 7-465 count because the plaintiff did not identify a town employee for whom indemnification was sought. See *Altfeter* v. *Naugatuck*, 53 Conn. App. 791, 799, 732 A.2d 207 (1999). After the plaintiff failed to replead his § 7-465 claim in a viable fashion, the trial court rendered judgment on that claim in the defendant's favor. Only the § 52-557n count is at issue in this appeal.

[4] Eastern now pays the defendant $60 for each reserved hour of use.

[5] The plaintiff appealed to the Appellate Court, and this court transferred the appeal to itself pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[6] "[A] municipal government is viewed as having a double function, first, the proprietary or corporate function, and, second, the governmental function as the arm or agent of the state. Sovereign immunity protects sovereign governments, such as states, and municipalities when acting as agents of the state, but not municipal corporations acting on their own behalf." 18 E. McQuillin, Municipal Corporations (3d Ed. Rev. 2003) § 53.23, p. 381.

[7] We have acknowledged that "[w]hen a governmental entity engages in conduct for its own corporate benefit in a manner that poses an unreasonable risk of harm to others, we can perceive of no reason why it should not be held responsible for all of the consequences of that conduct, just as a private person would be." *Blonski* v. *Metropolitan District Commission*, 309 Conn. 282, 295–96, 71 A.3d 465 (2013).

[8] At oral argument, the plaintiff suggested using separate definitions for special corporate profit and pecuniary benefit; however, this court analyzed those two phrases together in *Considine*, and we see no reason to waver from that analysis today.

[9] According to Ambrogi's affidavit, the swimming pool at issue in this case is operated by the defendant and its recreation department.

[10] The defendant in *Hannon* charged ten cents per lesson for children and twenty cents for adults. *Hannon* v. *Waterbury*, supra, 106 Conn. 14.

[11] We do not read *Considine* as suggesting that, simply because an activity is offered only to a municipality's residents, the municipality necessarily loses its immunity. Rather, even in such circumstances, activities that are meant to improve the general health, welfare or education of the municipality's inhabitants are deemed to indirectly benefit the general public and, thus, constitute activities performed as an agent of the state. *Considine* v. *Waterbury*, supra, 279 Conn. 846. The distinction is not implicated in this case, however, because the defendant permitted private groups to reserve use of the pool without including the residency information of their individual group members.

[12] For example, the record does not reveal the total number of hours that the pool is available in a year. Moreover, as previously noted, the expenses identified by the defendant for running the pool do not include all expenses pertaining to the pool, but specifically exclude the costs of electricity, heat, water, maintenance employees' salaries, and consumable supplies.

[13] Liability for a municipality's discretionary act is not precluded when (1) "the alleged conduct involves malice, wantonness or intent to injure"; (2) "a statute provides for a cause of action against a municipality or municipal official for failure to enforce certain laws"; or (3) "the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm . . . ." (Citations omitted; internal quotation marks omitted.) *Doe* v. *Petersen*, 279 Conn. 607, 615–16, 903 A.2d 191 (2006).

[14] We have previously held that the identifiable person, imminent harm

exception "applies in an action brought directly against [a] municipalit[y] pursuant to § 52-557n (a) (1) (A), regardless of whether an employee or officer of the municipality also is a named defendant." *Grady* v. *Somers*, supra, 294 Conn. 348; see *Benedict* v. *Norfolk*, 296 Conn. 518, 523, 997 A.2d 449 (2010) (citing *Grady* for proposition that action may name only municipality as defendant and claim identifiable person, imminent harm exception). Thus, we address this issue despite the lack of a claim against a specific municipal employee.

[15] Specifically, prior to the adoption of the current three-pronged identifiable person, imminent harm analysis, we concluded that an identifiable person subject to imminent harm existed among a group of intoxicated individuals who were arguing and scuffling in a parking lot when a police officer who spotted them failed to intervene until he heard a gunshot. *Sestito* v. *Groton*, 178 Conn. 520, 522–24, 423 A.2d 165 (1979). This holding, however, has been limited to its facts. *Edgerton* v. *Clinton*, supra, 311 Conn. 240. Even if its holding was not so limited, *Sestito* would not apply in the present case because, in contrast to the circumstances in *Sestito*, no evidence in the record supports the plaintiff's claim that he was actually identified to a town official in connection with the alleged harm.

[16] A recent Appellate Court decision, *Brooks* v. *Powers*, 165 Conn. App. 44, 138 A.3d 1012 (2016), cert. granted, 322 Conn. 907, 143 A.3d 603 (2016), is cited by the plaintiff to support his contention that he is an identifiable victim within the scope of this exception. It was not disputed in *Brooks*, however, that the decedent was an identifiable person. This court has granted the defendant's petition for certification to appeal in *Brooks*, limited to the issue of whether the Appellate Court properly applied the identifiable person, imminent harm standard and concluded that the harm at issue was imminent. *Brooks* v. *Powers*, 322 Conn. 907, 143 A.3d 603 (2016). We have examined the opinion of the Appellate Court in that case and conclude that its facts are highly distinguishable from those of the present case. By so observing, we do not intend to express any opinion as to the merits of that pending appeal.

---