MICHAEL H. HOURIGAN, ADMINISTRATOR, *vs.* THE CITY OF
NORWICH.

MARTHA MOONEY, ADMINISTRATRIX, *vs.* THE CITY OF
NORWICH.

Second Judicial District, Norwich, October Term, 1904.
TORRANCE, C. J., BALDWIN, HAMERSLEY, HALL and PRENTICE, Js.

By contesting an action for negligence upon its merits, in a hearing in
damages after a default or demurrer overruled, the defendant
thereby waives his right to question the sufficiency of the complaint
except for matters of substance. If, however, the complaint fails
to state a cause of action, a judgment for the plaintiff for substan-
tial damages is erroneous and may be reversed upon appeal.

In storing, distributing and selling water to its inhabitants at a profit,
under legislative authority, a city is not discharging a public gov-
ernmental duty, but is exercising a special privilege for its own
benefit and advantage, notwithstanding a portion of the water is
used by the city for protection against fire and in promoting the
public health; and is therefore liable for the negligent acts of its
agents and servants while engaged in work incidental to the en-
largement of its reservoir.

In the present case the supervision and management of the defendant's
water-works was confided to a board of water commissioners. *Held*
that the acts of this board and of its servants in the enlargement
of the reservoir, were in legal effect the acts of the city, for which
the city was responsible.

Upon a hearing in damages in an action for negligence, the defense
that the person injured and the one whose negligence caused the
injury were fellow-servants, is not available to the defendant un-
less he has given written notice thereof as required by General
Statutes, § 742.

As bearing upon the question of contributory negligence, the defend-
ant sought to prove that the plaintiff's intestate heard a certain
conversation between two of its witnesses. *Held* that the trial
court committed no error in excluding the opinion of such wit-
nesses that the decedent was near enough to have heard it.

Upon a hearing in damages after demurrer overruled, the burden of
disproving the negligence alleged, and of proving contributory
negligence, rests upon the defendant; and if this burden is not
sustained, the plaintiff is entitled to recover such substantial dam-
ages as he may have proved.

It has been held so recently and repeatedly that this court cannot retry questions of fact, that the record ought not now to be burdened with useless evidence and claims directed to that end.

Argued October 18th—decided December 16th, 1904.

ACTIONS to recover damages for negligence causing death, brought to the Superior Court in New London County where a demurrer to the complaint in each case was overruled (*Ralph Wheeler, J.*) and the causes were afterwards heard in damages to the court, *George W. Wheeler, J.;* facts found and judgment rendered for the plaintiff in each case, and appeal by the defendant. *No error.*

* In this court the appellee Mooney filed a plea in abatement, to which the appellant demurred. *Demurrer sustained.*

*Joseph T. Fanning,* for the appellant (defendant).

*Jeremiah J. Desmond,* for the appellee (plaintiff Hourigan).

*Donald G. Perkins,* for the appellee (plaintiff Mooney).

HAMERSLEY, J. The finding discloses the following facts: The city of Norwich, in pursuance of authority granted by its charter, owns and operates a system of water-works. By means of a reservoir constructed on its land outside the city limits water is collected, and this water is conducted to and distributed throughout the city and sold by the city at a profit to itself, and is also used by the city for protection

---

* The finding for appeal in this case was filed April 19th, 1904, and within ten days thereafter the appeal was duly taken and allowed. Between the date of the filing of the finding and the allowance of the appeal the defendant filed a motion to correct the finding. In pursuance of this motion, the judge made certain corrections and refiled the finding on September 7th, 1904. After the refiling, the defendant did not seek to alter or amend his appeal so taken and allowed on April 28th. The plaintiff pleaded these facts in abatement, claiming that under §§ 791, 792 of the General Statutes and § 104 of the Rules of Court the appeal taken on April 28th from the judgment rendered on February 16th, 1904, was void. A demurrer to this plea in abatement was sustained and the plea held insufficient.

against fire and in promoting public health. The supervision and management of the water-works is given to a board of water commissioners, subject to certain control by the city council, and these persons are treated as a corporation for the purpose of suing and being sued in a limited class of cases, not including this action. The city authorized an enlargement of its reservoir, including changing and raising the roadway surrounding the same. The work upon this roadway was done by the city under the general supervision of its board of water commissioners, acting by their president, and the board placed a superintendent, Mr. Dodd, in complete charge of this work. Mr. Dodd had power to hire and discharge all men employed, having for this work two hundred and twenty-four men, including section bosses or foremen, and sixteen teams; all men employed were paid weekly by the city. Mr. Dodd was a competent man for this position, and was paid weekly by the city for the time he actually worked. For the purpose of obtaining material to raise and fill the roadway, it became necessary to remove a bank nearby which was some seventeen feet in height. The plaintiff's intestate, Hallahan, worked as a laborer, and was required to shovel earth into a cart standing at the foot of this bank, which had been undermined, through the digging at its base, by a gang of men under a section boss named Carroll. While so at work the top of the bank suddenly gave way, bringing down a great mass of earth by which Hallahan was covered so that he died from suffocation. Hallahan did not know of the danger threatening him, and was in the exercise of ordinary care under the circumstances of the case. The section boss Carroll was not competent, and Dodd did not exercise ordinary care in his selection. The bank was not removed in the proper way, but in a way which tended to make the bank during the process of removal dangerous to those lawfully in its neighborhood, and it was not removed in the method required by ordinary care. In the removal of the bank as done by the defendant, ordinary care required reasonable and diligent inspection of the bank by the superintendent in charge, and the employ-

ment of a foreman, to take control of said work and men, who was competent to conduct such work. Neither by Dodd nor Carroll, nor by any one acting for the defendant or the board of water commissioners, was there suitable supervision and inspection of the work of removing said bank to see that it was conducted in a proper and reasonably safe manner.

The plaintiff brings this action to recover damages for injury thus done to his intestate. The complaint, after stating that the city owned the water-works system, land and reservoir, and was engaged for its own profit in selling the water, and was engaged through its officers, servants and agents in the work of enlarging the capacity of said reservoir, alleges, in paragraph 3, that the defendant, in the prosecution of said work, had before December 1st, 1902, been engaged in removing the earth from a bank on its said land; and in paragraph 4, that the defendant on said day, through its servants and agents in charge of the work of removing said bank—which servants, to the knowledge of the defendant, were incompetent for that purpose—had negligently removed the material at the bottom of said bank, and negligently failed to cause to be supported, or had broken down and removed, the overhanging top thereof, which had become dangerous, insecure, and liable at any time to fall and endanger the lives of the workmen removing the material from the bottom of said bank,—all of which was known, or would have been known by the exercise of reasonable care, to the defendant; that the defendant had negligently failed to provide suitable regulations, and to adopt a suitable system of supervision and inspection by a competent person, for the inspection of said bank to discover its dangerous condition, and for the prosecution of said work; and in paragraph 5, that on said day Hallahan, the plaintiff's intestate, then in the defendant's employ as an ordinary laborer, was set to work at the foot of said bank shovelling material therefrom into carts; that said Hallahan had no knowledge of the facts stated in paragraph 4, and was acting with all due care on his part; in paragraph 6, that while Hallahan, with other workmen, was

shovelling material at the foot of said bank into carts, suddenly and without warning the top of said bank, consisting of many tons of earth, broke off and fell, and said Hallahan was thereby so covered and buried in said material that he was suffocated and soon died therefrom; in paragraph 7, that the defendant, through its negligent acts and omissions above set forth, negligently caused the said injuries to said Hallahan.

The defendant demurred to the complaint, the material reasons assigned, and the only ones deserving special mention, being (1) that it appeared from the complaint that the acts charged were done by the board of water commissioners and not by the defendant; (2) and that in prosecuting the work described the city was performing a public governmental duty. The trial court overruled the demurrer, and the defendant assigns this action for error.

The plaintiff in his brief contends that this error, if it be one, cannot be considered on this appeal because the court, after the demurrer was overruled, ordered a default to be entered; citing in support of his contention *New York, N. H. & H. R. Co.* v. *Hungerford,* 75 Conn. 76. That case was a writ of error to reverse a judgment of the Superior Court recited in the writ, by which judgment it appeared that the defendant (plaintiff in error) had voluntarily suffered a default and moved for a hearing in damages, that the court allowed the motion, and, having heard the parties, assessed substantial damages. The defendant (plaintiff in error) made default, moving at the same time for a hearing in damages after his demurrer to the complaint had been overruled. We held that the plaintiff in error, by his default of appearance and motion to be heard in damages, had practically withdrawn his demurrer and stood substantially in the same position as if no demurrer had been interposed before his default; and, further, held that the claim that the judgment sought to be reversed was erroneous because based upon a complaint bad in substance and insufficient in law to support any judgment, could not be urged, inasmuch as this error was not specifically assigned in the writ, and that in the

case disclosed in the writ of error before us the rule requiring specific assignment should be strictly enforced.

In this case the defendant has not made default of appearance. It is not clear for what reason the court ordered a default to be entered. If there was no reason except that the defendant did not choose to avail himself of the privilege given him by the statute of 1872 (General Statutes, § 611), of filing an answer to the complaint after demurrer overruled, the order was unnecessary and improper. This question, however, is not a material one in the present case, because, in an action for negligence claiming unliquidated damages, when a defendant, either after a default or demurrer overruled, moves for a hearing in damages, giving notice of his intention to disprove on that hearing the material averments of the complaint, and to prove matters of defense, and upon the hearing substantially tries the case upon its merits, he must be held to have waived, by this action, any right to question the sufficiency of the complaint by reason of defects which are not matters of substance; but if, in such case, the complaint is bad in substance and does not state any cause of action, a judgment for the plaintiff will be erroneous and such error may be reversed upon appeal. *New York, N. H. & H. R. Co.* v. *Hungerford*, 75 Conn. 76.

In this case we think the defendant's claim that the complaint, for the material reasons assigned in his demurrer, is bad in substance and insufficient in law to support any judgment for the plaintiff, was fairly raised before the trial court and heard and determined against the defendant, and that under the circumstances appearing in the appeal the alleged error should be reviewed. We also think that the trial court did not err in overruling the defendant's claims.

The acts charged were done by the defendant city, and none the less so that they were done through the board of water commissioners. The action complained of was the action of the city, and the city was properly made defendant. *Platt Bros. & Co.* v. *Waterbury*, 72 Conn. 531, 546; *West Hartford* v. *Board of Water Commissioners*, 44 id. 360, 369.

The State cannot, without its consent expressed through legislation, be sued for injuries, otherwise tortious, resulting from an act done in the exercise of its lawful governmental power and pertaining to the administration of government; and when this power is exercised, as in most such cases it must be, through an agent, the agent cannot be sued for injuries resulting from a strict performance of the agency. In such case the act is regarded as the act of the State and not that of the agent, who is the mere instrument of the State and nothing more; and if the agent employs servants in the performance of the act he cannot be sued for injuries resulting from the negligence of the servants; the rule of *respondeat superior* does not apply; the State and not the agent is the real superior. But when the State, by way of grant or special privilege, authorizes private persons, in part for their personal benefit, to perform such governmental acts, these persons are not clothed with this immunity of mere agents of the State, although the authority given them may include the exercise of power such as that of eminent domain, which can only be exercised by the State or its agent. *Platt Bros. & Co.* v. *Waterbury*, 72 Conn. 531, 548. Municipal corporations are agents of the State in the exercise of certain governmental powers; they are also treated in certain respects as private corporations, and may be authorized by way of special privilege to perform certain acts, in part for the special benefit of the corporation and its inhabitants, which the State may lawfully perform in the exercise of its governmental power. When the State imposes upon an incorporated city the absolute duty of performing some act which the State may lawfully perform and pertaining to the administration of government, the city in the performance of that duty may be clothed with the immunities belonging to the mere agent of the State; but when the city is merely authorized by way of special privilege to perform such an act, in part for its corporate benefit and the benefit of its inhabitants, the city is not clothed with these immunities and is liable to be sued for injuries inflicted through its negligence in the performance of such an act. *Bronson* v. *Wall-*

*ingford,* 54 Conn. 513, 519; *Jones* v. *New Haven,* 34 id.
1, 13. A town owning property for purposes of gain is lia-
ble for the negligence of its servants in dealing with that
property. *Moulton* v. *Scarborough,* 71 Me. 267; *McMahon*
v. *Dubuque,* 107 Iowa, 62. "There are many duties im-
posed upon a municipality that may be discharged by a com-
missioner or superintendent who hires and discharges sub-
agents and servants, but this in no way relieves it from
responsibility for the negligent acts of those so employed."
*Missano* v. *Mayor,* 160 N. Y. 123, 129; *Bailey* v. *Mayo,* 3 Hill
(N. Y.) 531; *Barnes* v. *District of Columbia,* 91 U. S. 540.
"The distinction is well established between the responsi-
bilities of towns and cities for acts done in their public ca-
pacity, in the discharge of duties imposed upon them by the
legislature for the public benefit, and for acts done in what
may be called their private character, in the management of
property or rights voluntarily held by them for their own
immediate profit or advantage as a corporation, although in-
uring, of course, ultimately to the benefit of the public."
*Oliver* v. *Worcester,* 102 Mass. 489, 499. In the former
case they are not liable for the neglect of their agents and
servants; in the latter they may be liable, and are not nec-
essarily relieved from liability if the property is principally
used for purely public purposes and only in part for corpo-
rate profit. A corporation uses works constructed for the
public benefit for its corporate profit, when the profits are
to be applied to the maintenance of the works and the re-
duction of the debt incurred by the corporation in their con-
struction. *Mersey Docks Trustees* v. *Gibbs,* 11 H. L. Cas.
686. "When a municipal corporation transacts business as
a vendor and distributor of water, the relation of her em-
ployees is that of servants to her, and the maxim *respondeat
superior* applies to their acts and negligences in conducting
this business." *Philadelphia* v. *Gilmartin,* 71 Pa. St. 140,
158; *Fox* v. *Chelsea,* 171 Mass. 297; *Hand* v. *Brookline,*
126 id. 324; *Lynch* v. *Springfield,* 174 id. 430.

The city of Norwich was incorporated as a city under
a special charter. Prior to 1866 it was not authorized to

acquire property for the purpose of storing, distributing and selling water to its inhabitants.   In that year an Act was passed authorizing, but not requiring, the city as a corporation to acquire and use land and water rights outside its limits, and other property, for the purpose of storing, distributing and selling water to its inhabitants and to all persons on the lines of its water pipes, for its corporate profit; the profits to be applied to the enlargement of its plant or to the extinction of the debt it was authorized as a corporation to incur for the purchase of such property; and also to use the water thus brought into the city in the performance of its public duties of protecting its citizens from fire and promoting the public health.   The Act authorized the city to exercise some of these powers through the agency of a board of water commissioners, subject to the control of the city as therein provided.   6 Special Laws, pp. 100, 188, 620.

It is conceded that the city, by vote of its freemen at a meeting duly called, accepted the privileges thus granted. The relation of the city to the property it has acquired in maintaining a system of water-works has not been changed by the subsequent legislation to which our attention has been directed.   7 Special Laws, pp. 198, 203.   It is conceded that the land, including the reservoir and bank of earth mentioned in the complaint, was, at the time of the injuries mentioned, owned by the city and was being dealt with by its authority, by the board of water commissioners and the persons acting under their direction, for the purpose of providing a larger supply of water which the city was then engaged in selling for its profit.   In view of the law as above stated, we think that the defendant in the removal of the bank was not performing that public governmental duty which can clothe the defendant with immunity from liability for its negligence; and that the board of water commissioners, and the persons acting under their authority, acted as agents of the city, which is responsible for their negligence.   It follows, therefore, that the allegations of the complaint state a good cause of action against the defendant,

and that the claim of the defendant—that notwithstanding these allegations were not disproved upon the hearing in damages, yet the plaintiff could recover nominal damages only, because, for the reasons given in the demurrer, the complaint was bad in substance and incapable of supporting a valid judgment—was properly overruled.

The claim that Dodd, the superintendent, and the section boss Carroll, were fellow-servants, and therefore the defendant was not liable for their negligence, is not properly in the case. The fact of a fellow service that will exempt the master from liability is, in this case, an affirmative defense, which could not be considered upon the hearing in damages, because the defendant gave no notice of its intention to prove such matter of defense, as required by statute (§742).

Upon the trial the defendant introduced two witnesses to prove a conversation between themselves, and that Hallahan had heard what they said. One of these witnesses testified, without objection, that he thought Hallahan could have heard it. The other witness, one Yerrington, was asked if Hallahan were near enough to hear the conversation, and answered that he thought he was. The plaintiff objected because he was stating a conclusion. The court said that the testimony was not admissible in the way the defendant put it; that it would be for the court to draw its conclusion as to whether Hallahan heard it or not; and permitted the defendant to ask Yerrington all questions tending to show that Hallahan might have heard. There is no error in this.

The exception to the action of the court during the examination of the witness Chandler is wholly without merit.

Prior to the hearing in damages the defendant had given notice of his intention to deny, and to offer evidence to disprove, paragraphs 3, 4, 5, 6 and 7 of the complaint, and to offer evidence to prove contributory negligence. Upon the trial the plaintiff was bound to prove the amount of damage caused by the injury to his intestate; while the burden was on the defendant to disprove the facts alleged in the par-

agraphs mentioned, and to prove contributory negligence. If the defendant failed to sustain this burden both as to the facts alleged and as to contributory negligence, the plaintiff was entitled to the substantial damages proved by him.  The court finds that the defendant failed to sustain this burden, and details in the finding for appeal the subordinate facts it had found material to this conclusion.  It is apparent from this finding that the conclusion of the court as to negligence and contributory negligence is one which this court cannot review : it is not legally inconsistent with the subordinate facts found, and is not controlled by any erroneous view of the law.  The reasons of appeal do not clearly specify any error of law in this conclusion, except the claimed errors we have already considered.

There is no occasion for a correction of the finding.  An examination of the evidence fails to disclose that any fact material to any question of law has been found without evidence, or that any admitted or undisputed fact has been omitted from the finding.  *Allis* v. *Hall*, 76 Conn. 322, 340. The defendant, however, insists that this court should retry a main portion of the case upon the evidence certified, and substitute such facts as this court might find from such evidence for the facts found by the trial court upon the evidence produced before it, and determine the claims of law made in view of such substituted facts ; and assigns for reasons of appeal that the court erred " in holding upon the evidence that the defendant was guilty of negligence contributing to the injury which caused the death of plaintiff's intestate," and " in not holding upon the evidence that the workman who was killed was guilty of negligence contributing to the injury which caused his death."  The law upon this subject is settled, and there is no excuse for burdening the record with such useless assignments of error and claims, especially in view of the restatement of the law in very recent decisions.   In *Smedley* v. *Fair Haven & W. R. Co.*, 73 Conn. 410, ANDREWS, C. J., giving the opinion of the court, says : " We are compelled to say that none of these assignments presents a question on which this court

can pass.   We repeat here what we said in *Thresher* v. *Dyer*, 69 Conn. 404, 408 : ' Apparently the testimony certified fully justified the trial court in the conclusion of fact which it reached; but we cannot pass on this question.   It is firmly settled by the decisions of this court that our jurisdiction does not extend to the retrial upon the testimony, of the facts, based on some evidence, on which the judgment of a trial court, proceeding according to the rules of law, is founded.   And it is immaterial whether such retrial is sought under the claim that the court erred in reaching a conclusion of fact from the testimony, or under a claim of error in law because a judgment, plainly valid upon the facts settled by the trial court, would be as plainly invalid if it had been rendered on different facts such as might be settled by this court after a retrial on the evidence.   The thing actually sought, in either case, is a retrial of facts by an appellate court whose jurisdiction relates only to the correction of errors of law. ' "   In *Hayes* v. *Candee*, 75 Conn. 131, 133, TORRANCE, C. J., delivering the opinion, says : " The appeal record in this case seems to have been prepared, for the most part, as the basis of a futile attempt, on the part of the appellant, to retry here questions of fact conclusively settled in the trial court ; and hence it contains a great deal of matter not only useless and unnecessary, but harmful, in that it tends to obscure the real questions in the case."   In *Kirbell* v. *Pitkin*, 75 Conn. 301, 307, HALL, J., speaking for the court, says : " The impropriety and futility of thus attempting by appeal to retry in this court questions of fact, which have been conclusively settled by the finding of the trial court, has frequently been pointed out by us.   See *Hyde* v. *Mendel*, 75 Conn. 140 "; and in *Hyde* v. *Mendel* (p. 142) we say : " Claims that the court erred in weighing the evidence supporting the facts on which its judgment was founded cannot be considered.   In this case, and in some others recently before us, such claims seem to have induced an injection into the appeal record of much unnecessary and confusing matter.   The jurisdiction of this court, as fixed by the Constitution, has been determined by repeated deci-

sions of this court; and no mere provisions as to process can operate to change the real character of this jurisdiction. *Styles* v. *Tyler*, 64 Conn. 432, 454, 461; *Atwater* v. *Morning News Co.*, 67 id. 504, 527; *Nolan* v. *New York, N. H. & H. R. Co.*, 70 id. 159, 173; *Thresher* v. *Dyer*, 69 id. 404, 408; *Hoadley* v. *Savings Bank of Danbury*, 71 id. 599, 611, 613."

There is no error in the judgment of the Superior Court.

In this opinion the other judges concurred.