THE GENERAL SUPPLY COMPANY *vs.* LEO A. FOURNIER.

Second Judicial District, Norwich, October Term, 1919.
PRENTICE, C. J., WHEELER, BEACH, GAGER and CASE, Js.

Having purchased and received from the defendant a quantity of some substance supposed to be caustic potash, the plaintiff, about three weeks later, ordered 1,500 pounds more, to be "guaranteed same formula as lot previously sold." *Held:*—
1. That if the second lot sold and delivered was of the same formula and quality as the first, as found by the trial court, the defendant had

General Supply Co. *v.* Fournier.

discharged the full measure of his obligation under the stipulated condition of the plaintiff's second order.

2. That the evidence was amply sufficient to warrant the findings complained of by the plaintiff: first, that the subject-matter of the prior sale and delivery was granulated caustic potash, and that the defendant made no representations whatever as to the percentage of potash which this substance contained; and second, that the substance delivered in fulfilment of the later order was the same in quality as that theretofore sold and delivered.

Argued October 21st—decided December 22d, 1919.

ACTION to recover damages for an alleged breach of contract to sell the plaintiff fourteen drums of caustic potash, brought to and tried by the Superior Court in New London County, *Reed, J.;* facts found and judgment rendered for the defendant, and appeal by the plaintiff. *No error.*

The amended complaint on which the parties went to trial, alleged in substance a contract of sale by the defendant to the plaintiff in April, 1916, of a quantity of caustic potash at a stated price, which was paid; the delivery in claimed fulfilment thereof by the defendant of a like quantity of caustic soda, a commodity of much less value than that bargained for; seasonable notice to the defendant that the material so delivered was held subject to his order; and a demand for the return of the purchase price. Damages were claimed for losses incurred by reason of the goods not being as represented by the defendant.

In addition to a general denial, there was an affirmative defense, the important averments of which appear in the finding, and judgment was rendered for the defendant upon the following facts: On March 9th, 1916, Fournier, the defendant, sold and delivered to the plaintiff a certain quantity of granulated caustic potash, without representations of any character as to the percentage of potash actually contained in the lot sold. A few weeks later—April 1st, 1916,—the plain-

tiff ordered fifteen hundred pounds of caustic potash from the defendant, to be "guaranteed same formula as lot previously bought," this term referring to the granulated caustic potash previously bought by the plaintiff on March 9th, 1916. The defendant filled this second order by delivering to the plaintiff on April 18th, 1916, fifteen hundred pounds of granulated caustic potash of the same formula and quality as the earlier lot referred to. No representations of any character were made by the defendant as to the second lot, other than that the substance was of the same formula as that supplied on the earlier occasion.

The evidence and rulings in the case have been certified for review in considering the claimed errors of the court in finding certain facts and refusing to find others. Of the remaining assignments of error, one is based upon the rejection of certain testimony offered to establish a disputed element of damage, and the rest are substantially alternative statements, with modifications, of the claim that the court was wrong in holding that the material actually supplied by the defendant on the second order satisfied the terms of the contract of sale.

*Arthur T. Keefe,* for the appellant (plaintiff).

*Daniel M. Cronin,* for the appellee (defendant).

CASE, J. The plaintiff urges that it is entitled either to damages for the defendant's failure to deliver what was actually bought, or, as an alternative to this relief, to be restored to its original position by a return of the purchase price, on the ground that the parties never having reached a common understanding in the matter, no contract resulted from their undertaking.

There might be difficulty in adjusting this alternative

attitude of the plaintiff to the position which it has voluntarily assumed upon the pleadings, but that matter becomes unimportant.   Neither of the plaintiff's claims is tenable upon the finding as it stands, and the controlling question is whether the trial court has so unwarrantably found, or refused to find, any facts materially involved in a determination of the case, as to demand our correction of its action.

In a more vital measure than is perhaps at first apparent, the whole theory of the plaintiff's case depends upon the circumstances attending the earlier of the two transactions—that of March 9th, 1916.   The parties were hopelessly apart in the trial court as to what Fournier then sold or assumed to sell, and whether or not he made representations as to its nature or quality.   These were questions of fact that, in certain obvious aspects of the case, were substantially decisive of it.   The plaintiff, whose identity for every practical purpose of ours is merged in that of Mr. Pilling, its president, contended not only that caustic potash of the purest grade was the mutually accepted subject of this first dealing, but that Fournier represented what he had for sale as of that specific standard, and "ninety-two per cent pure."   If the plaintiff had established that foundation, its case, which was manifestly planned to rest upon it, would have been a radically different one from that which the record presents.   The step from that to a conclusion that Fournier had not delivered, in fulfilment of his second sale, material of a quality which he had represented that of the first to be, would have been inevitable on the conceded facts.   That in turn, would have fairly left open for determination the precise application of the stipulated condition of the second sale,—that the substance delivered be "guaranteed same formula as lot previously bought,"— and might have afforded fair room for argument as to

whether the "lot previously bought" was the lot actually bargained for, or the lot actually delivered; material of the purity represented by Fournier, or material of the inferior quality delivered by Fournier.

But no such inquiry arises or is permitted here. The trial court's conclusion is, without qualification, adverse to this contention of the plaintiff, and the superstructure of its case disappears with its faulty foundation. It is definitely found, both that the subject of the first sale and delivery was granulated caustic potash, and that Fournier made no representations whatever as to the percentage of potash which this substance contained. Clearly, so long as that finding remains unmodified, the plaintiff is without standing to question here either the conclusiveness of its acceptance of the first lot of material delivered, or that the second delivery was a full compliance with the conditions of the contract,— if the court was justified in its further finding that all the material delivered on both occasions was of one formula and quality.

The appeal attacks the finding in the respects indicated as not warranted by the evidence, but the record fails to bear out this claim. Fournier's testimony, corroborated by that of two other witnesses, was in effect that he expressly disclaimed to Pilling, upon the latter's first visit of inquiry and negotiation on the plaintiff's behalf, all knowledge of the chemical composition of the substance the plaintiff was seeking to buy, and fairly warned Pilling that though he, Fournier, had bought the stuff for caustic potash, he knew nothing whatever as to the percentage of potash which it contained; that he submitted the material to Pilling's inspection so that the latter might satisfy himself whether it was what the plaintiff wanted, and that upon his suggestion Pilling took away a sample of it— delaying his determination to buy until some days

later. It may also be observed that Pilling himself, as a witness, corroborated a detached but significant element of the defendant's general contention, in his reiterated statement that the so-called first lot "was bought to sample."

With such testimony in the case there can be no question, of course, that the findings complained of were amply warranted, and our limited function upon appeals of this character has been too often defined to justify a restatement of it here. *Hourigan* v. *Norwich*, 77 Conn. 358, 368–370, 59 Atl. 487. We must take the record, therefore, as we find it, and upon it the plaintiff is barred here from questioning, either directly or indirectly, the conclusiveness of the first transaction.

With that door closed, the one remaining question is whether the substance delivered in fulfilment of the second order was of the same formula and quality as that which Fournier delivered on the first occasion. If so, this measured Fournier's obligation under the stipulated condition of the plaintiff's second order. The trial court has so found, and the evidence too plainly justifies the finding to call for any statement of it.

Our conclusion makes it unnecessary to consider the court's ruling in the exclusion of testimony as complained of. It could have had no bearing upon the determination of the cause.

There is no error.

In this opinion the other judges concurred.