DOUGLAS MARTEL *v.* METROPOLITAN DISTRICT COMMISSION ET AL.
(SC 17373)

Sullivan, C. J., and Borden, Norcott, Palmer and Vertefeuille, Js.

Argued May 18—officially released August 16, 2005

*Gerald S. Sack*, with whom, on the brief, was *Nicole D. Dorman*, for the appellant (plaintiff).

*Jack G. Steigelfest*, for the appellees (defendants).

*Opinion*

SULLIVAN, C. J. The plaintiff, Douglas Martel, appeals[1] from the judgment of the trial court rendering summary judgment in favor of the defendants, the Metropolitan District Commission (commission) and certain officers and employees of the commission (employees).[2] The plaintiff claims on appeal that the

---

[1] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

[2] The defendant employees are: (1) Anthony V. Milano, chief executive officer; (2) Robert E. Moore, chief administrative officer; (3) George H. Sparks, chief operating officer; (4) Cornelius Geldof, Jr., director of engineering and planning; and (5) Robert A. Kerkes, director of water treatment and supply.

trial court improperly concluded that governmental immunity, pursuant to General Statutes § 52-557n,[3] pre-

[3] General Statutes § 52-557n provides in relevant part: "(a) (1) Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties; (B) negligence in the performance of functions from which the political subdivision derives a special corporate profit or pecuniary benefit; and (C) acts of the political subdivision which constitute the creation or participation in the creation of a nuisance; provided, no cause of action shall be maintained for damages resulting from injury to any person or property by means of a defective road or bridge except pursuant to section 13a-149. (2) Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by: (A) Acts or omissions of any employee, officer or agent which constitute criminal conduct, fraud, actual malice or wilful misconduct; or (B) negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law.

"(b) Notwithstanding the provisions of subsection (a) of this section, a political subdivision of the state or any employee, officer or agent acting within the scope of his employment or official duties shall not be liable for damages to person or property resulting from: (1) The condition of natural land or unimproved property; (2) the condition of a reservoir, dam, canal, conduit, drain or similar structure when used by a person in a manner which is not reasonably foreseeable; (3) the temporary condition of a road or bridge which results from weather, if the political subdivision has not received notice and has not had a reasonable opportunity to make the condition safe; (4) the condition of an unpaved road, trail or footpath, the purpose of which is to provide access to a recreational or scenic area, if the political subdivision has not received notice and has not had a reasonable opportunity to make the condition safe; (5) the initiation of a judicial or administrative proceeding, provided that such action is not determined to have been commenced or prosecuted without probable cause or with a malicious intent to vex or trouble, as provided in section 52-568; (6) the act or omission of someone other than an employee, officer or agent of the political subdivision; (7) the issuance, denial, suspension or revocation of, or failure or refusal to issue, deny, suspend or revoke any permit, license, certificate, approval, order or similar authorization, when such authority is a discretionary function by law, unless such issuance, denial, suspension or revocation or such failure or refusal constitutes a reckless disregard for health or safety; (8) failure to make an inspection or making an inadequate or negligent inspection of any property, other than property owned or leased by or leased to such political subdivision, to determine whether the property complies with or violates any law or contains a hazard to health or safety, unless the political subdivision had notice of such a violation of law or such a hazard or unless such failure to inspect or such inadequate or negligent inspection constitutes a reckless disregard for health or safety under all the

cluded the plaintiff's negligence claims. We disagree and affirm the judgment of the trial court.

The record reveals the following factual and procedural history. The commission is a political subdivision of the state, specially chartered by the Connecticut General Assembly for the purpose of water supply, waste management and regional planning.[4] See 20 Spec. Acts 1204, No. 511 (1929); see also *Rocky Hill Convalescent Hospital, Inc.* v. *Metropolitan District*, 160 Conn. 446, 450–51, 280 A.2d 344 (1971). The commission owns 24,000 acres of property in the state, including a recreational area known as "Greenwoods," which consists of 400 acres of partially wooded land through which the west branch of the Farmington River flows. The commission does not use Greenwoods for water provision or waste management services. Rather, it has opened the area to the public, free of charge, for hunting and fishing. To facilitate these activities, the commission maintains a parking lot on the property and a handicapped fishing pier. The property also has an old unpaved service road, but the commission did not create the service road and does not maintain it. Additionally, there are dirt trails located in Greenwoods. Although some commission employees were aware of these trails, the commission did not create the trails and does not maintain them. The defendants are not aware of what activities, if any, for which the dirt trails are used.

On July 7, 2001, the plaintiff went mountain biking on an unpaved dirt trail in Greenwoods. One-half mile

relevant circumstances; (9) failure to detect or prevent pollution of the environment, including groundwater, watercourses and wells, by individuals or entities other than the political subdivision; or (10) conditions on land sold or transferred to the political subdivision by the state when such conditions existed at the time the land was sold or transferred to the political subdivision. . . ."

[1] It is undisputed that the commission is a political subdivision of the state within the meaning of § 52-557n.

into the trail, the plaintiff arrived at a washed out area covered with small branches and logs that caused him to lose his balance and fall into an abutting ravine, a distance of approximately fifteen to twenty feet. As a result of the fall, the plaintiff sustained serious physical injuries, including paralysis from the chest down.

The plaintiff filed the present action against the defendants seeking compensatory damages for the injuries he had sustained as a result of his fall. The plaintiff alleged in his complaint that the defendants were negligent in one or more of the following ways: (1) they "failed to exercise reasonable care in the design, supervision, and maintenance of the trail"; (2) they "permitted the trail to be located immediately adjacent to a [fifteen to twenty] foot vertical drop into a ravine"; (3) they "failed to take adequate measures to guard against trail users entering the ravine"; (4) "the area where the incident took place was, and had been for more than a reasonable time, dangerous and unsafe in that it was not clearly marked, and yet the defendant[s] had failed to correct or remedy this condition"; (5) "the surface of the trail was, and had been for more than a reasonable time, dangerous and unsafe in that there was an area that had been washed out and yet the defendant[s] had failed to correct or remedy this condition"; (6) they "failed to adequately inspect the trail to ensure it was in a reasonably safe condition"; (7) they "failed to reroute or close the trail until proper measures were taken to ensure it was in a reasonably safe condition"; (8) they "failed to warn the plaintiff and others of the dangerous and unsafe condition of this area"; and (9) they "failed to erect barricades or other devices so as to protect trail users from going into the ravine . . . ."

The defendants, in their answer to the complaint, denied the plaintiff's allegations and asserted six special defenses, including governmental immunity pursuant

to § 52-557n.[5] Thereafter, the defendants moved for summary judgment claiming, inter alia, that the plaintiff's cause of action was barred by § 52-557n. In its opposition to the defendants' motion for summary judgment, the plaintiff claimed that issues of fact existed as to whether: (1) the defendants' allegedly negligent acts were discretionary in nature pursuant to § 52-557n (a) (2) (B); (2) the defendants' allegedly negligent acts were performed for pecuniary benefit pursuant to § 52-557n (a) (1) (B); and (3) § 52-557n (b) (4) provides the plaintiff with a direct cause of action against the defendants.

In its memorandum of decision, the trial court noted that § 52-557n "protects political subdivisions of the state and its employees from liability when a negligent act or omission is committed within the discretionary duties of the political subdivision or its officers and was not done for pecuniary gain." The trial court concluded that the allegedly negligent acts of the defendants "require[d] the exercise of judgment." The trial court noted that the plaintiff failed to submit any evidence demonstrating that the defendants were ministerially required to maintain and supervise the trails in Greenwoods and to ensure safety on the property and, therefore, concluded that the alleged failure of the defendants to perform these duties "must be considered a discretionary act." Accordingly, the trial court rendered summary judgment in favor of the defendants. Thereafter, the plaintiff filed a motion to reargue on the grounds that the trial court's memorandum of decision failed to address the plaintiff's claims that (1) the defendants' allegedly negligent acts were performed for pecu-

---

[5] The defendants also asserted that the plaintiff's claims were barred by: (1) common-law doctrines of governmental immunity and qualified immunity; (2) the immunity afforded by General Statutes § 25-43c; (3) the immunity afforded by General Statutes § 52-557g; (4) the immunity afforded by General Statutes § 52-557j; and (5) the plaintiff's own carelessness and negligence.

niary benefit and (2) § 52-557n (b) (4) provides the plaintiff with a direct cause of action. The trial court denied the plaintiff's motion, and this appeal followed.

On July 13, 2004, subsequent to the filing of the present appeal, the plaintiff moved for an articulation of the trial court's decision because the memorandum of decision failed to address the plaintiff's claims that the defendants' acts were proprietary in nature and that § 52-557n (b) (4) provides the plaintiff with a direct cause of action. The defendants opposed the plaintiff's motion, and the trial court never ruled on it. On June 7, 2005, this court, sua sponte, remanded the present matter to the trial court with direction to articulate its judgment in accordance with the plaintiff's motion for articulation. In its articulation, the trial court stated that the plaintiff's claim that the defendants were "involved in a proprietary function for a pecuniary benefit . . . was so specious an argument and so unrelated to the plaintiff's personal injury claim that no specific response was required. Even if the allegations proved to be true, they would be insufficient to support [the] plaintiff's claim that [the] defendant[s] [were] conducting a proprietary rather than a governmental function on the land. No material question of fact presented itself as to this claim." In addition, the trial court articulated that the plaintiff "had no viable cause of action under . . . § 52-557n (b) (4) . . . . The allegations and the offer of proof, in the opinion of this court, raised no material question of fact as to whether the accident occurred because of the condition of an unpaved trail. Nor was there a material question of fact as to whether [the] defendant[s] had received notice of the alleged defect prior to the accident. Furthermore, [the] plaintiff's claim is adequately ruled out by [§ 52-557n (b) (1)] providing immunity [for these] defendant[s] for an accident resulting . . . from the condition of natural

land or unimproved property . . . ." (Internal quotation marks omitted.)

On appeal, the plaintiff claims that the trial court improperly rendered summary judgment in favor of the defendants because issues of fact existed as to whether: (1) the defendants' allegedly negligent acts were discretionary in nature; (2) the defendants' allegedly negligent acts were performed for pecuniary benefit; and (3) § 52-557n (b) (4) provides the plaintiff with a direct cause of action because the defendants had notice and a reasonable opportunity to correct the condition of the trail on which the plaintiff was injured.

The defendants respond that the trial court properly rendered summary judgment in their favor because: (1) the defendants' allegedly negligent acts were discretionary in nature as a matter of law; (2) the defendants' allegedly negligent acts were not proprietary in nature as a matter of law; and (3) § 52-557n (b) (4) does not provide the plaintiff with a direct cause of action. Additionally, the defendants set forth the following alternate grounds for affirming the trial court's judgment: (1) the plaintiff's claims are barred by governmental immunity because they seek damages resulting from the "condition of natural land or unimproved property" within the meaning of § 52-557n (b) (1); and (2) the defendants did not owe a duty of care to the plaintiff because mountain biking is an inherently hazardous sport, the plaintiff was a licensee on the commission's property and the commission is an owner of recreational land within the meaning of General Statutes § 52-557g.[6]

---

[6] General Statutes § 52-557g provides in relevant part: "(a) Except as provided in section 52-557h, an owner of land who makes all or any part of the land available to the public without charge, rent, fee or other commercial service for recreational purposes owes no duty of care to keep the land, or the part thereof so made available, safe for entry or use by others for recreational purposes, or to give any warning of a dangerous condition, use, structure or activity on the land to persons entering for recreational purposes.

"(b) Except as provided in section 52-557h, an owner of land who, either directly or indirectly, invites or permits without charge, rent, fee or other

We agree with the defendants that the trial court properly rendered summary judgment in their favor pursuant to § 52-557n because the defendants' allegedly negligent acts were discretionary in nature and were not performed for a pecuniary benefit. We further agree with the defendants that § 52-557n (b) (4) does not provide the plaintiff with a direct cause of action. Accordingly, we do not reach the defendants' alternate grounds for affirming the trial court's judgment.

As a preliminary matter, we set forth the appropriate standard of review. "In seeking summary judgment, it is the movant who has the burden of showing the nonexistence of any issue of fact. The courts are in entire agreement that the moving party for summary judgment has the burden of showing the absence of any genuine issue as to all the material facts, which, under applicable principles of substantive law, entitle him to a judgment as a matter of law. The courts hold the movant to a strict standard. To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . . As the burden of proof is on the movant, the evidence must be viewed in the light most favorable to the opponent. . . . When documents submitted in support of a motion for summary judgment fail to establish that there is no genuine issue of material fact, the nonmoving party has no obligation to submit documents establishing the existence of such an issue. . . . Once the moving party has met its burden, however, the opposing party must present evidence that demon-

commercial service any person to use the land, or part thereof, for recreational purposes does not thereby: (1) Make any representation that the premises are safe for any purpose; (2) confer upon the person who enters or uses the land for recreational purposes the legal status of an invitee or licensee to whom a duty of care is owed; or (3) assume responsibility for or incur liability for any injury to person or property caused by an act or omission of the owner. . . ."

strates the existence of some disputed factual issue. . . . It is not enough, however, for the opposing party merely to assert the existence of such a disputed issue. Mere assertions of fact . . . are insufficient to establish the existence of a material fact and, therefore, cannot refute evidence properly presented to the court under Practice Book § [17-45]. . . . Our review of the trial court's decision to grant [a] motion for summary judgment is plenary." (Internal quotation marks omitted.) *Boone* v. *William W. Backus Hospital*, 272 Conn. 551, 558–59, 864 A.2d 1 (2005).

## I

The plaintiff first claims that the trial court improperly rendered summary judgment in the present matter because issues of fact existed concerning whether the defendants' allegedly negligent acts were discretionary in nature. The defendants respond that their allegedly negligent acts were discretionary in nature as a matter of law. We agree with the defendants.

"This court has previously stated that [a] municipality itself was generally immune from liability for its tortious acts at common law . . . . We have also recognized, however, that governmental immunity may be abrogated by statute." (Internal quotation marks omitted.) *Spears* v. *Garcia*, 263 Conn. 22, 28, 818 A.2d 37 (2003). General Statutes § 52-557n (a) (1) provides in relevant part: "Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties . . . ." We previously have concluded that "[t]his language clearly and expressly abrogates the traditional common-law doctrine in this state that municipalities are immune

from suit for torts committed by their employees and agents." *Spears* v. *Garcia*, supra, 29.

Subdivision (2) of § 52-557n (a) lists two exceptions to the statutory abrogation of governmental immunity. The exception relevant to this appeal provides: "Except as otherwise provided by law, a political subdivision of the state shall not be liable for damages to person or property caused by . . . (B) negligent acts or omissions which require the exercise of judgment or discretion as an official function of the authority expressly or impliedly granted by law." General Statutes § 52-557n (a) (2) (B). Because the parties in the present matter assume that the immunity provided by § 52-557n (a) (2) (B) is identical to a municipal employee's qualified immunity for discretionary acts at common law, we also assume, without deciding, that § 52-557n (a) (2) (B) codifies the common law. See *Elliott* v. *Waterbury*, 245 Conn. 385, 410–11, 715 A.2d 27 (1998) (assuming, without deciding, that § 52-557n [a] [2] [B] codifies common law); see also *Myers* v. *Hartford*, 84 Conn. App. 395, 401, 853 A.2d 621 (§ 52-557n [a] [2] [B] codifies common-law qualified immunity for municipal employees' discretionary acts), cert. denied, 271 Conn. 927, 859 A.2d 582 (2004).

"The [common-law] doctrines that determine the tort liability of municipal employees are well established. . . . Generally, a municipal employee is liable for the misperformance of ministerial acts, but has a qualified immunity in the performance of governmental acts. . . . Governmental acts are performed wholly for the direct benefit of the public and are supervisory or discretionary in nature." (Citations omitted; internal quotation marks omitted.) *Spears* v. *Garcia*, supra, 263 Conn. 35–36. "The hallmark of a discretionary act is that it

requires the exercise of judgment."[7] *Lombard* v. *Edward J. Peters, Jr., P.C.*, 252 Conn. 623, 628, 749 A.2d 630 (2000). "In contrast, [m]inisterial refers to a duty which is to be performed in a prescribed manner without the exercise of judgment or discretion." (Internal quotation marks omitted.) *Spears* v. *Garcia*, supra, 36. "Although the determination of whether official acts or omissions are ministerial or discretionary is normally a question of fact for the fact finder . . . there are cases where it is apparent from the complaint." (Citation omitted.) *Lombard* v. *Edward J. Peters, Jr., P.C.*, supra, 628; see also *Evon* v. *Andrews*, 211 Conn. 501, 506–507, 559 A.2d 1131 (1989).

In *Evon* v. *Andrews*, supra, 211 Conn. 505–507, the plaintiffs brought a common-law tort action against the defendant municipality and its employees for their allegedly negligent failure to inspect adequately a rental dwelling. We determined that the defendants' acts were discretionary in nature because "what constitutes a reasonable, proper or adequate inspection involves the

---

[7] "A municipal employee's immunity for the performance of discretionary governmental acts is, however, qualified by three recognized exceptions: first, where the circumstances make it apparent to the public officer that his or her failure to act would be likely to subject an identifiable person to imminent harm . . . second, where a statute specifically provides for a cause of action against a municipality or municipal official for failure to enforce certain laws . . . and third, where the alleged acts involve malice, wantonness or intent to injure, rather than negligence." (Internal quotation marks omitted.) *Spears* v. *Garcia*, supra, 263 Conn. 36.

The trial court determined that the only common-law exception relevant to the present matter was the "exception [that] permits an action to be brought in circumstances likely to cause imminent harm to an identifiable person." The trial court concluded, however, that this exception was inapplicable to the facts and circumstances of the present case. At oral argument before this court, the plaintiff informed this court that he rested on his brief concerning the impropriety of the trial court's conclusion. Our review of the plaintiff's brief, however, reveals that this issue was not briefed on appeal. Accordingly, we deem the claim to be abandoned. See, e.g., *Updike, Kelly & Spellacy, P.C.* v. *Beckett*, 269 Conn. 613, 642–43, 850 A.2d 145 (2004) (claims not briefed on appeal are deemed to be abandoned).

exercise of judgment." Id., 506. Accordingly, we concluded that the trial court properly granted the defendants' motion to strike because qualified governmental immunity precluded the plaintiffs' claim as a matter of law. Id., 506–507; see also *Elliott* v. *Waterbury*, supra, 245 Conn. 411 (parties did not dispute that defendants' conduct in allowing hunting on watershed land and failing to improve safety of that activity required exercise of discretion under § 52-557n [a] [2] [B]); *Segreto* v. *Bristol*, 71 Conn. App. 844, 857, 804 A.2d 928 (city's allegedly negligent design and maintenance of stairwell was discretionary in nature under § 52-557n [a] [2] [B] because "[d]eterminations as to what is reasonable or proper under a particular set of circumstances necessarily involve the exercise of judgment"), cert. denied, 261 Conn. 941, 808 A.2d 1132 (2002).

In the present matter, the plaintiff's complaint essentially alleges that the defendants were negligent in their: (1) design, supervision, inspection and maintenance of the trail on which the plaintiff was injured; (2) failure to warn recreational users of the trail's dangerous and unsafe condition; and (3) failure to barricade or close the trail. The plaintiff, in its opposition to the defendants' motion for summary judgment, did not present any evidence demonstrating that a policy or directive existed requiring the defendants to perform these duties. Absent evidence of such a policy or directive, we conclude that the defendants', in determining whether to supervise, inspect and maintain the trails in Greenwoods and when to mark, close or barricade the trails, if at all, were engaged in duties that inherently required the exercise of judgment.[8] See *Evon* v.

---

[8] The plaintiff also claimed at oral argument before this court that the allegedly negligent acts or omissions of a municipality or a municipal employee cannot be considered discretionary in nature unless the evidence affirmatively established that the municipal employee made decisions and exercised judgment. Essentially, the plaintiff claimed that summary judgment was improper in the present matter because no evidence was produced demonstrating that the defendants had considered inspecting and main-

*Andrews,* supra, 211 Conn. 505–507; *Segreto* v. *Bristol,* supra, 71 Conn. App. 857–58. Accordingly, we conclude that the defendants' allegedly negligent acts were discretionary in nature as a matter of law and that, therefore, the trial court properly rendered summary judgment in favor of the defendants.

The plaintiff claims, however, that a trier of fact reasonably could conclude, from the manifestly hazardous condition of the trail and the known use of the property for recreational activities, that the defendants had a ministerial duty to take corrective action in the present matter. The plaintiff cites no law and provides no legal analysis in support of this proposition.[9] Accordingly,

---

taining the trails in Greenwoods and had exercised their judgment by deciding not to do so. We are not persuaded. Our case law reveals that the determination of whether an act or omission is discretionary in nature and, thus, whether governmental immunity may be successfully invoked pursuant to § 52-557n (a) (2) (B), turns on the "character of the act or omission complained of in the complaint." *Segreto* v. *Bristol,* supra, 71 Conn. App. 854; see also *Evon* v. *Andrews,* supra, 211 Conn. 506. Accordingly, where it is apparent from the complaint that the defendants' allegedly negligent acts or omissions *necessarily* involved the exercise of judgment, and thus, necessarily were discretionary in nature, summary judgment is proper. In the present matter, we conclude that even if the defendants did not *expressly* consider inspecting and maintaining the trails in Greenwoods, the fact that they did not do so reflects an implicit exercise of discretion.

[9] The plaintiff does cite a Superior Court case in support of his claim for the first time in his reply brief. The plaintiff's belated reliance on nonbinding authority, however, combined with his failure to analyze the facts in the present matter in relation to the law and facts of the case cited, are insufficient to render the plaintiff's claim adequately briefed. See *New London Federal Savings Bank* v. *Tucciarone,* 48 Conn. App. 89, 100, 709 A.2d 14 (1998). In any event, we find the facts of the case cited by the plaintiff to be distinguishable from the present matter. In *Silver* v. *West Hartford,* Superior Court, judicial district of Hartford at Hartford, Docket No. CV98-0585357-S (October 14, 1999), the plaintiffs brought a negligence action against the town of West Hartford (town) and its employees pursuant to § 52-557n for the death of their son who drowned while on a field trip with a town operated summer recreational program. The defendants moved to strike the plaintiffs' complaint because it "failed to allege that the defendants owed a duty of supervision to the decedent or the other children" and the defendants' duty to supervise therefore was discretionary. The trial court disagreed because the plaintiffs had pleaded sufficient facts to establish

we decline to review the plaintiff's claim because it is inadequately briefed. See *Knapp* v. *Knapp*, 270 Conn. 815, 823 n.8, 856 A.2d 358 (2004) ("We consistently have held that [a]nalysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . Where the parties cite no law and provide no analysis of their claims, we do not review such claims." [Internal quotation marks omitted.]).

## II

The plaintiff next claims that the trial court improperly rendered summary judgment in the present matter because issues of fact exist concerning whether the defendants' allegedly negligent acts were performed for pecuniary gain. Specifically, the plaintiff claims that the commission acquired Greenwoods for the development of future water supplies and, therefore, that the defendants' maintenance of the property was "inextricably linked to [the proprietary] operation of its water utility." The defendants respond that the acts alleged were not proprietary in nature as a matter of law because the plaintiff failed to produce any evidence demonstrating a link between their allegedly negligent conduct and their proprietary functions.[10] We agree with the defendants.

---

that the defendants "had a duty to supervise the young children *under their care*, with special attention owed to the children who were poor swimmers . . . ." (Emphasis added.) Id. Accordingly, the trial court concluded that the defendants' duty to supervise the children was ministerial in nature and denied the defendants' motion to strike. In the present matter, however, the care, custody or control of the plaintiff was not at issue. Accordingly, we conclude that the plaintiff's reliance on *Silver* is misplaced.

[10] Alternatively, the defendants claim that § 52-557n (a) (2) (B) modifies the common law by extending a statutory grant of governmental immunity to discretionary acts performed for pecuniary benefit. Because we conclude that the defendants' allegedly negligent conduct was not proprietary in nature as a matter of law, we need not address this claim and we express no opinion on it. See *Elliott* v. *Waterbury*, supra, 245 Conn. 410 n.16.

Section 52-557n (a) (1) provides that "[e]xcept as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by . . . (B) negligence in the performance of functions from which the political subdivision derives a special corporate profit or pecuniary benefit . . . ." With minor exception not relevant to our analysis, the parties assume that § 52-557n (a) (1) (B) codifies the common-law abrogation of governmental immunity for proprietary acts.[11] Accordingly, we also assume, without deciding, that § 52-557n (a) (1) (B) codifies the common law. See *Elliott* v. *Waterbury*, supra, 245 Conn. 410–11 (assuming, without deciding, that § 52-557n [a] [1] [B] codifies common law).

It is well established that a proprietary function is an act done "in the management of [a municipality's] property or rights for its own corporate benefit or profit and that of its inhabitants . . . ." *Richmond* v. *Norwich*, 96 Conn. 582, 588, 115 A. 11 (1921). The municipal operation of a water utility for corporate profit is a proprietary function. See *Abbott* v. *Bristol*, 167 Conn. 143, 150, 355 A.2d 68 (1974); *Richmond* v. *Norwich*, supra, 588; *Hourigan* v. *Norwich*, 77 Conn. 358, 364–66, 59 A. 487 (1904). A municipal entity is subject to liability pursuant to § 52-557n (a) (1) (B), however, only if its allegedly tortious conduct was inextricably linked to a proprietary function. *Elliott* v. *Waterbury*, supra, 245 Conn. 413.

In *Elliott* v. *Waterbury*, supra, 245 Conn. 388–89, the decedent, who was jogging on watershed land near the Waterbury reservoir, was shot and killed by a hunter who was hunting on the watershed property. The plaintiff, as administratrix of the decedent's estate, asserted negligence claims against the city of Waterbury (city) and certain employees pursuant to § 52-557n for their

---

[11] See footnote 10 of this opinion.

alleged negligence in permitting hunting on watershed land and failing to take certain steps to improve the safety of that activity. Id., 387–90. The trial court rendered summary judgment in favor of the defendants, concluding that the governmental immunity provided by § 52-557n precluded the plaintiff's claims. Id., 391, 409. The plaintiff argued on appeal to this court that the city and its employees were not shielded by governmental immunity because their alleged negligence arose from a proprietary function, namely, the operation of a water utility. Id., 409–10. We rejected this argument because the city's "allegedly tortious conduct—opening the watershed land to hunting, and the manner in which it regulated that activity—is unconnected to its operation of a water utility."[12] Id., 413. We distinguished *Abbott* v. *Bristol*, supra, 167 Conn. 143, *Richmond* v. *Norwich*, supra, 96 Conn. 582, and *Hourigan* v. *Norwich*, supra, 77 Conn. 358, noting that "in each of those cases, the allegedly tortious conduct of the municipalities was inextricably linked to the operation of the water utility for corporate gain." *Elliott* v. *Waterbury*, supra, 413. Specifically, we noted that "[i]n *Hourigan*, the plaintiff's negligence claim arose out of a fatal accident that occurred during the construction of an expansion of the defendant's reservoir. *Hourigan* v. *Norwich*, supra, [360–62]. In *Richmond*, the plaintiff sought recovery for injuries she had suffered when she was shot by a city employee who was hired to guard the reservoir. *Richmond* v. *Norwich*, supra, [586]. Finally, in *Abbot[t]*, the plaintiff landowners sought recovery for diminution of their property value caused by the city water department's construction of a large storage tank on adjoining land. *Abbot[t]* v. *Bristol*, supra, [150]." *Elliott* v. *Waterbury*, supra, 413. Because the allegedly

---

[12] We noted that "the plaintiff does not allege, and there is no indication in the record, that [the city] received corporate gain or benefit from the hunting." *Elliott* v. *Waterbury*, supra, 245 Conn. 414.

negligent conduct in *Elliott* was not inextricably linked to a proprietary activity, we concluded that the trial court properly rendered summary judgment in favor of the defendants. Id., 414.

In the present matter, the commission did not use Greenwoods for any purpose connected to its provision of water supplies and waste management services[13] and derived no pecuniary gain from the hunting and fishing activities that took place on the property. The plaintiff claims that the allegedly negligent conduct of the defendants was proprietary in nature, however, because Greenwoods may have been acquired initially for the

---

[13] The plaintiff claims that summary judgment was improper absent some evidence of the "regulatory classification of . . . [Greenwoods] and whether its location, adjacent to the west branch of the Farmington River, played a role in maintaining water purity of a distribution reservoir . . . ." We are not persuaded. In support of their motion for summary judgment, the defendants produced evidence, in the form of affidavits and testimony of commission employees, establishing that the commission did not use Greenwoods for water provision or for waste management services. The plaintiff failed to produce any contrary evidence and, instead, relied on evidence that the commission had, over time, acquired land for the development of future water supplies and on the fact that water company land that is available for future use is classified pursuant to § 25-37c-1 et seq. of the Regulations of Connecticut State Agencies. It is well established, however, that once the party moving for summary judgment demonstrates that no genuine issue of material fact exists, the "opposing party must present *evidence* that demonstrates the existence of some disputed *factual* issue [and] [i]t is not enough . . . for the opposing party merely to assert the existence of such a disputed issue." (Emphasis added; internal quotation marks omitted.) *Boone* v. *William W. Backus Hospital*, supra, 272 Conn. 558–59. The plaintiff in the present matter, in opposition to the defendants' motion, failed to produce any countervailing evidence demonstrating that the commission maintained Greenwoods for the purpose of preserving water purity. Accordingly, this fact was not in dispute and did not preclude the trial court from rendering summary judgment in favor of the defendants. Even assuming, arguendo, however, that this fact was in dispute, the plaintiff failed to produce any evidence demonstrating the existence of an inextricable link between the commission's allegedly negligent supervision and maintenance of the trail on which the plaintiff was injured and the commission's proprietary maintenance of the property for purposes of preserving water purity. See *Elliott* v. *Waterbury*, supra, 245 Conn. 413–14.

purpose of developing future water supplies and, consequently, the defendants' "maintenance of the Greenwoods property, was inextricably linked to [their] operation of [a] water utility." The plaintiff fails to explain, and we fail to discern, how the defendants' allegedly negligent supervision and maintenance of the trail on which the plaintiff was injured was inextricably linked to the commission's alleged purpose in acquiring the property. Accordingly, the plaintiff's claim fails. To the extent that the plaintiff claims that *all* maintenance of the Greenwoods property must be considered inextricably linked to the commission's proprietary functions because of the commission's alleged proprietary purpose in acquiring Greenwoods, we reject the plaintiff's claim. The plaintiff's broad interpretation of the inextricable link requirement is contrary to this court's conclusion in *Elliott* v. *Waterbury*, supra, 245 Conn. 413, which requires an *inextricable link* or inherently close connection between the plaintiff's *specific* allegations of negligence and the defendants' operation of a water utility. Id., 413–14 ("[T]he Waterbury defendants' allegedly tortious conduct—opening the watershed land to hunting, and the manner in which it regulated that activity—is unconnected to its operation of a water utility. . . . It is apparent, rather, that that activity consisted of a set of policy decisions—which the plaintiff concedes required the exercise of judgment and discretion—concerning the use of city land for recreational purposes."). Accordingly, we conclude that the allegedly negligent acts of the defendants in the present matter were not proprietary in nature as a matter of law.

## III

Lastly, the plaintiff claims that the trial court improperly rendered summary judgment in favor of the defendants because § 52-557n (b) (4) provides a direct cause of action against municipal defendants and, in the present matter, issues of fact existed concerning whether the defendants had constructive notice and a reason-

able opportunity to correct the condition of the trail on which the plaintiff was injured. The defendants respond that § 52-557n (b) (4) does not provide the plaintiff with a direct cause of action and, instead, merely provides a limited exception to the imposition of governmental liability contained in § 52-557n (a).[14] We agree with the defendants.

"Issues of statutory construction raise questions of law, over which we exercise plenary review." (Internal quotation marks omitted.) *Tarnowsky* v. *Socci*, 271 Conn. 284, 287, 856 A.2d 408 (2004). General Statutes § 1-2z provides that "[t]he meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." Further, it is well established that "[w]hen a statute is in derogation of common law or creates a liability where formerly none existed, it should receive a strict construction and is not to be extended, modified, repealed or enlarged in its scope by the mechanics of [statutory] construction. . . . In determining whether or not a statute abrogates or modifies a common law rule the construction must be strict, and the operation of a statute in derogation of the com-

---

[14] Alternatively, if we construe § 52-557n (b) (4) to provide the plaintiff with a direct cause of action, the defendants claim that the trial court properly rendered summary judgment in their favor because there is no evidence in the record to support the plaintiff's claim that the defendants had notice and a reasonable opportunity to correct the condition of the trail. Further, the defendants claim that there is no evidence in the record that the trail in the present matter "provide[d] access to a recreational or scenic area" and, accordingly, that § 52-557n (b) (4) is inapplicable to the plaintiff's claims. Because we conclude that § 52-557n (b) (4) does not create a direct cause of action against the defendants, we need not reach these claims.

mon law is to be limited to matters clearly brought within its scope." (Internal quotation marks omitted.) *Spears* v. *Garcia*, supra, 263 Conn. 28.

We begin our analysis with the language of the statute. Section 52-557n (a) (1) provides in relevant part: "Except as otherwise provided by law, a political subdivision of the state shall be liable for damages to person or property caused by: (A) The negligent acts or omissions of such political subdivision or any employee, officer or agent thereof acting within the scope of his employment or official duties . . . ." Section 52-557n (b) provides in relevant part: *"Notwithstanding the provisions of subsection (a) of this section,* a political subdivision of the state or any employee, officer or agent acting within the scope of his employment or official duties *shall not be liable* for damages to person or property resulting from . . . (4) the condition of an unpaved road, trail or footpath, the purpose of which is to provide access to a recreational or scenic area, if the political subdivision has not received notice and has not had a reasonable opportunity to make the condition safe . . . ." (Emphasis added.)

The plaintiff appears to argue that § 52-557n (b) (4), like subsection (a) of the statute, abrogates the common-law governmental immunity of a municipality. Specifically, the plaintiff seems to argue that because § 52-557n (b) (4) provides that a municipality *"shall not be liable"* for injuries incurred as a result of "the condition of an unpaved road, trail or footpath . . . [if it] has *not* received notice and has *not* had a reasonable opportunity to make the condition safe," then a municipality *must be liable* for said injuries if it *has* received notice and *has* had an opportunity to make the condition safe. (Emphasis added.) The plaintiff claims that because factual issues exist in the present matter concerning whether the defendants had constructive notice of the dangerous condition of the trail on which the plaintiff

was injured and whether the defendants had a reasonable opportunity to make the condition of the trail safe, summary judgment was improper. We are not persuaded.

As discussed in part I of this opinion, subsection (a) of § 52-557n abrogates the common-law governmental immunity of a municipality. See *Spears* v. *Garcia*, supra, 263 Conn. 29. Subsection (b) of § 52-557n provides that "[n]otwithstanding . . . subsection (a)," a municipality "shall not be liable" if certain conditions are met. We conclude that this language plainly and unambiguously provides *exceptions* to the liability imposed by subsection (a) of the statute and, thus, functions to limit, rather than expand the legislative abrogation of common-law governmental immunity contained in § 52-557n. See *Spears* v. *Garcia*, supra, 33 ("subsection [b] of § 52-557n, which references subsection [a], sets forth many exceptions under which an injured party may not pursue a direct action in negligence against a municipality"); *Elliott* v. *Waterbury*, supra, 245 Conn. 395 ("[s]ubsection [a] [of § 52-557n] sets forth general principles of municipal liability and immunity, while subsection [b] sets forth [ten] specific situations in which both municipalities and their officers are immune from tort liability" [internal quotation marks omitted]). Because we conclude in parts I and II of this opinion that the defendants enjoy governmental immunity pursuant to subsection (a) of § 52-557n, subsection (b) of the statute is inapplicable to the plaintiff's claims.[15]

The judgment is affirmed.

In this opinion the other justices concurred.

---

[15] Accordingly, any issues of fact regarding the defendants' knowledge of the condition of the trail, whether the defendants had a reasonable opportunity to correct the condition of the trail and whether the trail provided access to a recreational or scenic area; see footnote 14 of this opinion; did not preclude the trial court from rendering summary judgment in favor of the defendants.